STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Michael CLEVELAND, Defendant-Appellant.

Supreme Court

*No. 82–1399–CR. Argued March 28, 1984.—Decided May 30, 1984.*

(Also reported in 348 N.W.2d 512.)

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Glenn L. Cushing,* assistant state public defender.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *State v. Cleveland,* 114 Wis. 2d 213, 338 N.W.2d 500 (Ct. App. 1983), reversing the judgment of conviction and reversing an order denying postconviction relief of the circuit court for Burnett county, Harry F. Gundersen, Circuit Judge.

Three issues are on review. The first issue is whether in execution of a search warrant the police officers were justified in making a "no-knock" entry, that is, entering the residence without first announcing their presence (identity) and purpose and allowing time for the door to be opened. The second issue is whether the defendant waived the right to raise the fourth amendment claim by failing to file a suppression motion or whether the failure to file the suppression motion resulted from ineffective assistance of counsel, thereby vitiating any waiver.[1] The third issue is whether the defendant had standing to object to the manner in which the police executed the search warrant.

---

[1] The state argues that the waiver issue is the threshold issue which this court should decide before reaching the merits of the Fourth Amendment claim. However, because the defendant asserts that the "waiver" was due to trial counsel's failure to recognize a meritorious fourth amendment claim, we first determine whether that claim is indeed meritorious. The defendant concedes that if his fourth amendment claim fails, so too does his claim of ineffective assistance of counsel.

We hold that no special circumstances are present in this case justifying the no-knock entry in execution of the warrant. We have reviewed the merits of the fourth amendment claim because of the importance of the question presented and do not therefore reach the questions of waiver and ineffective counsel. We also conclude that the defendant did have standing to litigate the fourth amendment claim. Accordingly we affirm the decision of the court of appeals.

The facts relevant to the issues before this court are not in dispute. On June 29, 1980, the Burnett county court commissioner issued a search warrant authorizing a search of a cabin for controlled substances, along with drug paraphernalia, records, and other evidence of the purchase or sale of controlled substances.[2] The warrant authorized the officers to "enter the buildings or vehicles on the said premises without having to knock at any doors, identify themselves as officers before entering or give any prior warning of their duty or purpose before entering to individuals inside the buildings or vehicles

[2] Sec. 968.12(1), Stats. 1981–82, defines a search warrant as follows:

"A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown. The warrant shall be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter, showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief."

Though the warrant was captioned "Before Hon. Harry F. Gundersen, Circuit Judge," the warrant was, in fact, signed by a court commissioner rather than Circuit Judge Gundersen. The issue before the court is the no-knock provision in the warrant, not the powers of a commissioner. See secs. 757.69(1)(b), 967.07, Stats. 1981–82, authorizing a court commissioner to issue a warrant.

until the officers have had sufficient time to secure the vehicles, buildings and persons therein."

The affidavit by an investigator for the sheriff's department in support of the request for the warrant stated that a reliable informant reported that he had observed the occupants of the cabin in possession of phencyclidine (PCP), a controlled substance, that the occupants had sold PCP, and that they would be returning to the cabin from Chicago around June 28 or 29, 1980, with PCP which they would attempt to sell. The affiant stated that Burnett county authorities had previously observed drug sales at the cabin.

The affiant also requested that a no-knock provision be inserted in the warrant, stating that the particular controlled substances which were the subject of the search could be "readily disposed of or concealed." This part of the affidavit stated the affiant's basis for requesting no-knock authority as follows:

"[The affiant] has ten years experience in drug investigation and affiant has learned during this experience that the substances he has prayed be searched for in this affidavit are readily disposed of or concealed when officers enter building for the purpose of locating and securing possession of them thus making it likely that in the absence of being able to enter such building freely and without prior warning the substances may be disposed of or concealed."

Burnett county sheriff's officers executed the search warrant at 9:30 a.m. on Sunday, June 29, 1980. The officers did not announce their presence and purpose; instead, finding the door to the cabin unlocked, they simply walked in. No force or violence was used at any time. The officers found the defendant in the bedroom with a female companion. The officers then identified themselves, announced their purpose, and searched the cabin. The officers found several grams of phencyclidine,

a schedule I controlled substance, packaged in foil packets.

The defendant did not bring a pretrial motion to suppress the evidence obtained in the search, nor did he object to its introduction at trial. He was convicted of possession of a controlled substance with intent to deliver and sentenced to five years imprisonment.

The defendant filed a motion for postconviction relief, asserting that the evidence obtained during the search of the cabin was obtained in violation of his fourth amendment rights. The only challenge to the validity of the warrant or to the search was the propriety of the no-knock provision in the warrant and the no-knock entry in execution of the warrant. He also asserted that his trial counsel was ineffective for failing to raise this issue. The trial court, without granting an evidentiary hearing, denied the motion. The court of appeals summarily reversed and remanded for a hearing on the defendant's fourth amendment and ineffective assistance of counsel claims.

At the hearing, the defendant's trial counsel testified that he had three reasons for not challenging the no-knock entry: (1) the warrant authorized such a search, (2) a challenge would have been fruitless because the judge who would hear the motion would have been the same judge who authorized the no-knock entrance, and (3) his client was in the midst of plea negotiations. Counsel testified further that his research on the issue consisted solely of checking ch. 968 of the statutes and possibly a practice manual; he did not research case law in Wisconsin or any other jurisdiction.

The trial court again denied the defendant's motion for postconviction relief. After the defendant filed an appeal, the court of appeals requested that this court accept certification of the appeal; this court refused.

The court of appeals then concluded that the no-knock entry was invalid, that the defendant's trial counsel was ineffective for failure to file a suppression motion, and that the evidence seized in the search should be suppressed. The state appealed the decision to this court.

The first issue we address is whether the police officers were justified in making a no-knock entry.

The requirement that police officers seeking to enter a dwelling in execution of a warrant must announce their presence (identity) and purpose and allow time for the door to be opened, known as the rule of announcement, has long been recognized in Anglo-American common law.[3] The earliest common-law decision enunciating the rule apparently was in 1603 in *Semayne's Case*, 5 Coke Rep 91a, 91b, 11 Eng. Rul. Cas. 629, 631, 77 Eng. Rep. 194, 195, where the court said:

"In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors."

[3] For a history and discussion of the rule *see Miller v. United States*, 357 U.S. 301, 306–310 (1958); *Accarino v. United States*, 179 F2d 456, 460–65 (D.C. Cir. 1949); 2 LaFave, *Search and Seizure*, sec. 4.8(a) (1978); Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 U. Pa. L. Rev. 499 (1964); Kaplan, *Search and Seizure: A No-Man's Land in the Criminal Law*, 49 Calif. L. Rev. 474, 500–503 (1961); Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem*, 44 St. John's L. Rev. 626 (1970); Note, *Announcement in Police Entries*, 80 Yale L.J. 139 (1970); Note, *The Magistrate's Role in Unannounced Entry*, 26 Hastings L.J. 273 (1974); Note, *No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970*, 55 Minn. L. Rev. 871 (1971). *See also* Model Code of Pre-Arraignment Procedure, sec. SS 220.3(2) and commentary, pp. 129–31, 513–14 (Proposed Official Draft 1975).

The rule of announcement addresses the manner in which a legitimate government intrusion is to take place. The rule serves three important purposes: (1) protecting the individual's privacy in the home;[4] (2) decreasing the potential for violence by alerting the resident that the officer is legitimately on the premises; and (3) preventing the physical destruction of property by giving the resident the opportunity to admit the officer voluntarily.[5]

In addition to its common law heritage, the rule of announcement is generally viewed as one of federal constitutional dimension. *Ker v. California,* 374 U.S. 23 (1963), is regarded as authority for the proposition that "the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures." Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. 626, 643 (1970). In *Ker* eight justices apparently agreed that a police officer's manner of entry is subject to the fourth amendment standards of reasonableness; four of these eight justices concluded that the unannounced entry was reasonable in that case, and four concluded it was unreasonable;[6] the ninth justice concluded that searches

---

[4] *See Warden v. Hayden,* 387 U.S. 294, 305 (1967), recognizing the Fourth Amendment's role in protecting privacy. During a debate in Parliament in 1763, William Pitt eloquently stated the principle that the government has limited power to enter a home:

"The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail—its roof may shake—the wind may blow through it—the storm may enter—the rain may enter—but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement." Bartlett, *Familiar Quotations,* p. 246 (14th ed. 1968).

[5] 2 LaFave, *Search and Seizure,* sec. 4.8(a) p. 124 (1978).

[6] Although *Ker* involved an entry for purposes of making an arrest, courts and commentators have applied *Ker* to search warrants. See LaFave, *supra,* sec. 4.8(a) at 123–24.

and seizures by state authorities should be judged by the fundamental fairness criterion of the due process clause of the fourteenth amendment and, applying this test, upheld the entry.

The United States Supreme Court has thus indicated that there are minimum constitutional requirements for the manner of executing a search warrant but has not yet defined these requirements with precision. It is clear, however, that no-knock entry may be constitutional under certain special circumstances. Such circumstances include a reasonable belief that announcement of police presence would endanger the safety of the police or others, or a reasonable belief that unannounced entry is required to prevent the destruction of evidence.[7]

This court has recognized that the rule of announcement is applicable to the execution of warrants in this state. When seeking entrance to a dwelling to execute a warrant, "a police officer must identify himself and his purpose and, except under special circumstances,

---

[7] The following language in Justice Brennan's dissent is frequently quoted as setting forth several recognized exceptions to the rule of announcement:

". . . the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." *Ker, supra,* 372 U.S. at 47.

For one commentator's analysis of five exceptions to the rule of announcement—the destruction of evidence exception, the peril exception, the escape exception, the useless gesture exception, and the unoccupied premises exception—see Note, *No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970,* 55 Minn. L. Rev. 871 (1971).

allow time for the door to be opened." *Morales v. State,* 44 Wis. 2d 96, 106, 170 N.W.2d 684 (1969). This court has also recognized that strict adherence to the rule of announcement is not required when the circumstances encountered by the officer at the time she or he executes the warrant justify a departure from the rule. *State v. Suits,* 73 Wis. 2d 352, 356, 243 N.W.2d 206 (1976).

This court had concluded that the propriety of a deviation from the rule of announcement is judged on the particular circumstances of each case. In *Morales, supra,* 44 Wis. 2d at 106, the police officer knocked and announced his presence and purpose. Receiving no answer but hearing a radio playing inside, he forced the door open and entered. In *Suits, supra,* 73 Wis. 2d at 356, an officer heard music and many voices as he approached the house and observed that the occupants watched his approach. The door was partially open. The officer opened the door further and walked in. This court stated that the officer reasonably concluded that a knock would have been a useless gesture because it would not have been heard. In *State v. Meir,* 60 Wis. 2d 452, 457–58, 210 N.W.2d 685 (1973), an officer knocked on the door and the defendant partially opened it. Officers then pushed the door open the rest of the way and entered. This court stated that the defendant's response of partially opening the door justified immediate entry because of the officers' reasonable concern for safety.

As a preliminary matter, we must consider whether a search warrant may include an authorization for a no-knock entry. No Wisconsin statute either authorizes or prohibits no-knock entry provisions in search warrants.[8]

---

[8] Sec. 968.12(2), Stats. 1981–82, states that a "search warrant may authorize a search to be conducted anywhere in the state and may be executed pursuant to its terms anywhere in the state." Sec. 968.14, Stats. 1981–82, states that "[a]ll necessary force may be used to execute a search warrant or to effect any

<span style="background:black"></span>

While some courts have ruled that a no-knock search warrant may not be issued in the absence of statutory authorization,[9] others have authorized the issuance of no-knock search warrants notwithstanding lack of a statutory provision, preferring to encourage the informed, deliberate determination of a judge.[10] Although these latter cases do not govern the disposition of this case, we find this reasoning persuasive.

<span style="background:black"></span>
We recognize that there may be occasions in which facts justifying an unannounced entry would be known at the time the warrant is sought,[11] and that both law enforcement officers and citizens benefit from review of the entry by a neutral magistrate.[12] We hold therefore that where the affidavit in support of a petition for a search warrant sets forth special circumstances with sufficient particularity to show reasonable cause to believe that circumstances presently exist which justify a no-knock entry, the judge may include in the warrant specific authority to enter the premises without an announcement of presence and purpose and without al-

entry into any building or property a part thereof to execute a search warrant."

[9] See, e.g., State v. Spargo, 30 Wash. App. 949, 639 P.2d 782 (1982); State v. Eminowicz, 21 Ariz. App. 417, 520 P.2d 330 (1974); Parsley v. Superior Court, 9 Cal. 3d 934, 109 Cal. Rptr. 563, 513 P.2d 611 (1973).

[10] See, e.g., State v. Lien, 265 N.W.2d 833, 836–38 (Minn. 1978); Commonwealth v. Scalise, 387 Mass. 413, 439 N.E.2d 818, 822 (1982); Cox v. State, 160 Ga. App. 199, 286 S.E.2d 482, 484–85 (1981).

[11] LaFave, supra, at sec. 4.8(g). See, e.g., People v. Dumas, 9 Cal. 3d 871, 878, 109 Cal. Rptr. 304, 309, 512 P.2d 1208, 1213 (1973).

[12] The informed and deliberate decision of a neutral and detached judicial officer is to be preferred over the hurried action of the officer. See Aguilar v. Texas, 378 U.S. 108, 110–111 (1964).

lowing time for the door to be opened. But such prior authorization is in effect conditional; a magistrate cannot absolutely authorize no-knock entry. A search warrant may be executed within five days after issuance.[13] Circumstances which justify noncompliance with the rule of announcement when the warrant was obtained might change after the judge's evaluation and before the officer's entry. If the warrant authorizes a no-knock entry, officers may forego announcement unless between the time of the issuance of the warrant and its execution new information has come to the officers' attention that would obviate the need to enter without complying with the rule of announcement.

We first consider whether the facts alleged in the affidavit submitted to obtain the search warrant made a sufficient showing to allow the court commissioner to reasonably conclude in this case that a no-knock entry would be justified. Neither the facts nor the inferences from the facts are disputed. This court is thus presented solely with a question of law. The court will independently examine the information presented to the judge to determine whether the constitutional requirement of reasonableness is met, that is, whether upon objective analysis of the information relied upon by the judge, the court can conclude that a no-knock entry was justified and reasonable.

The state argues that the affidavit in this case adequately demonstrated that a no-knock entry was justified to prevent the destruction of evidence. Police surveillance had revealed previous sale of PCP at the cabin, and an informant had told the affiant that the defendant would be returning to the cabin from Chicago with additional

---

[13] Sec. 968.15(1) provides that "a search warrant must be executed and returned not more than 5 days after the date of issuance."

drugs which the defendant would quickly sell. The affidavit also stated that in the affiant's experience, the drugs sought were "readily disposed of or concealed" if the building's occupants were given notice of police presence.

The imminent destruction of evidence is a special circumstance generally recognized as justifying a no-knock entry. Both the state and defendant agree that the police are excused from the rule of announcement when they are acting reasonably to prevent destruction or disposal of the items stated in the warrant. Moreover, neither the defendant nor the state in this case asks this court to adopt a "blanket" rule that since narcotics are by their very nature easily destroyed or disposed of, no-knock entry is always constitutionally permitted in executing search warrants involving drugs.

We reject a blanket approach in narcotics cases that the nature of the evidence itself—without more—allows the unannounced entry. The mere fact that drugs fall into a general category of materials that are by their nature capable of destruction does not justify unannounced entry to execute a search warrant.[14] We conclude that law enforcement officers are justified in dispensing with the rule of announcement only if they have particular grounds in the given case to give them reasonable cause to believe that the drugs will be destroyed. The essence of fourth amendment protection against unreasonable searches and seizures is that there must be a specific showing to justify state intrusion into a pri-

---

[14] *See* cases cited in court of appeals decision, *State v. Cleveland,* 114 Wis. 2d 213, at n. 1, 338 N.W.2d 500 (Ct. App. 1983). *State v. Bates,* 120 Ariz. 561, 587 P.2d 747, 749 (1978), and *State v. Jeter,* 30 Wash. App. 360, 634 P.2d 312, 314 (1981), may be added to cases cited in accord.

vate dwelling. As Chief Justice Traynor wrote in *People v. Gastelo:*

"Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must have sufficiently particular reason to enter at all, so they must have some particular reason to enter in the manner chosen." [15]

The state points out that particular grounds exist in this case in addition to the nature of drugs. The state asserts that the defendant sold drugs and that this commercial activity is an additional ground to give the officers reason to believe that the drugs would be quickly destroyed. We do not find this reasoning persuasive. It may be true that some drug dealers have made preparations to destroy their contraband in the event of a search. On the other hand, drug dealers are probably more likely than drug users to possess a sufficiently large quantity of drugs that rapid destruction would be difficult if not impossible. Thus, without further particular information such as, *e.g.*, the quantity of drugs expected to be discovered and that this amount is readily destroyed if announcement is made, or the preparations that have been made to facilitate the destruction of the drugs, or the defendant's destruction of drugs during a previous attempt to search the premises, an allegation that drugs have been sold on the premises is an inadequate reason to believe that the evidence will be de-

[15] 67 Cal. 2d 586, 588–89, 63 Cal. Rptr. 10, 12, 432 P.2d 706, 708 (1967).

stroyed if the police announce their presence prior to the search.

On review of the affidavit, we conclude that the affidavit did not make an adequate specific showing with respect to the defendant, the house, or the evidence sought. Although the affiant showed reasonable grounds to believe the suspect was selling drugs, the affiant did not show other particular factors present in this case that made it reasonable to believe that the drugs would be destroyed unless the entry was unannounced.

The state also contends that even absent valid prior authorization in the warrant, circumstances encountered by officers as they execute the warrant may justify a no-knock entry. We agree with this principle and wish to emphasize that the justification for dispensing with the announcement requirement must be judged as of the time the warrant is executed. Even if the police have no reason to seek advance authorization for a no-knock entry or have failed to seek advance authorization or if advance authorization was denied, they may still make a no-knock entry to execute the warrant if facts existing at the time of entry give them reasonable cause to believe that a no-knock entry is necessary to execute the warrant safely or successfully. Moreover, as we explained earlier, even if the search warrant grants the officers advance authorization of unannounced entry to execute the warrant, a no-knock entry should not be made if between the time the warrant is issued and the time it is executed new information comes to the officers' attention that obviates the necessity of a no-knock entry.

On review of an order on the suppression motion, the findings of fact, if any, of the circuit court will be sustained unless clearly erroneous. The appellate court, however, will independently examine the circumstances of the case to determine whether the constitutional re-

quirement of reasonableness is satisfied. The inquiry on review is whether upon an objective analysis of the circumstances confronting the officers on the execution of the warrant the court can conclude that the no-knock entry was justified and reasonable. *Bies v. State,* 76 Wis. 2d 457, 469, 251 N.W.2d 461 (1977); *Ker v. California,* 374 U.S. 23, 33, 34 (1963).

In this case nothing in the situation the officers faced as they approached the cabin gave them any reasons, beyond those already stated in the affidavit, to believe that the evidence would be destroyed or that their safety would be endangered if they announced their presence before entering.[16] They did not, for example, observe that the defendant was aware of their approach. They heard no cries of alarm or scurrying feet. They did not see or hear anything that would lead them to reasonably believe that an attempt was being or would be made to destroy the evidence. The officers simply approached the cabin, found the door unlocked, walked in, and confronted the defendant and his guest in the bedroom. We conclude therefore that the no-knock entry in execution of the search warrant in this case was invalid because the officers lacked specific information which would warrant a reasonable belief that the evidence would be destroyed.

---

[16] The state argues that because drug dealers are often armed, the officers reasonably believed that their safety would be endangered if they announced their presence. The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. The officer must have knowledge of specific facts that indicate that this particular person will conduct himself or herself in this manner when confronted by police. In this case, however, there was no information that the defendant was armed or had taken other security precautions. *Cf. People v. Conner,* 78 Ill. 2d 525, 401 N.E.2d 513 (1979) (no-knock entry proper where police during previous searches had encountered guard dogs and barred windows and doors, and had discovered that the defendant kept buckets of water near the toilet to facilitate drug disposal).

The state contends that the defendant has waived his right to present his fourth amendment claim by failing to bring a pretrial motion to suppress, as required by sec. 971.31(2), Stats. 1981–82, or to object to the admission of the evidence at trial. The defendant acknowledges this failure but asserts that this decision was not a strategic waiver but was due instead to trial counsel's inadequate knowledge of this area of law. The defendant thus argues that trial counsel's failure to litigate the meritorious fourth amendment claim rendered trial counsel's assistance ineffective. The court of appeals concluded, without discussion, that the defendant's counsel was ineffective for his failure to file a suppression motion.

Although objections which have been waived are not reviewable as a matter of right, this court may consider such objections if it chooses. *Cf. State v. Sonnenberg,* 117 Wis. 2d 159, 176, n. 6, 344 N.W.2d 95 (1984) (failure to object to admission of evidence as required by sec. 901.03(1)(a), Stats.) ; *Manson v. State,* 101 Wis. 2d 413, 417, n. 2, 304 N.W.2d 729 (1981) (failure to object to jury instruction as required by sec. 972.10(5), Stats.) ; *State v. Wedgeworth,* 100 Wis. 2d 514, 528–29, 302 N.W.2d 810 (1981) (failure to state particular grounds for objecting to admission of evidence as required by sec. 901.03(1)(a), Stats.) ; *Ollinger v. Grall,* 80 Wis. 2d 213, 223, 258 N.W.2d 693 (1977) (failure to object to jury instructions and to form of special verdict).

The merits of the dispute as to the validity of no-knock searches under the circumstances presented in this case is a question of sufficient importance to warrant our consideration, and we have undertaken an analysis of the issue notwithstanding the failure of defense counsel

to make the appropriate objection. We therefore do not reach the question of ineffective counsel.

Finally, the state requests that if the case be remanded for a new trial, the state be permitted to challenge the defendant's standing to object to the search. The state thus raises the question of standing for the first time. The defendant presents a compelling argument that the state has waived its right to contest the defendant's standing. This case, however, is being remanded for a new trial, and there is a question whether the issue may arise on remand. The merits of this issue have been adequately brief by the parties and in the interest of judicial economy and finality of decisions, we will examine the question of whether the defendant had standing to object to the manner in which the police conducted the search.

In determining whether a person is entitled to challenge the constitutionality of a search and seizure, the inquiry must focus on whether "the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." *Rakas v. Illinois,* 439 U.S. 128, 140 (1978). The relevant question which must be answered in making this determination is whether the defendant had a legitimate expectation of privacy in the invaded place. *Id.* at 143; *State v. Fillyaw,* 104 Wis. 2d 700, 710, 312 N.W.2d 795 (1981).

We must therefore determine whether the defendant had a legitimate expectation of privacy in the cabin at the time the search was made. Because the facts relevant to this issue are not in dispute, this court may examine the totality of the circumstances to determine the legal issue of whether the defendant had a legitimate expectation of privacy. *State v. Fillyaw, supra,* 104 Wis. 2d at 729.

The defendant and his companion were visiting Wisconsin and were living in a cabin owned by the defendant's mother. There were no other residents of the cabin at the time. The defendant thus appears to have had dominion and control over the cabin for the period of his visit. *Rakas v. Illinois, supra,* 439 U.S. at 149. Although it is asserted that the defendant was using the cabin and selling drugs, the sales did not make the cabin a business enterprise open to the public. Under these circumstances, we conclude that the defendant had a sufficient legitimate expectation of privacy to provide standing to assert the fourth amendment claim. *See United States v. Haydel,* 649 F.2d 1152 (5th Cir. 1981) (legitimate expectation of privacy of individual temporarily using parent's home).

For the reasons set forth, we conclude that the no-knock entry in execution of the search warrant was unreasonable under the circumstances of this case. Accordingly we affirm the decision of the court of appeals. The judgment of conviction is reversed and the matter remanded to the circuit court for a new trial at which the evidence seized during the search of the cabin is excluded.

*By the Court.*—Decision of the court of appeals affirmed.

STEINMETZ, J. (concurring). In this case we have not accepted a blanket no-knock rule for the search of commercial drug dealers' premises. However, that is a strong special circumstance which could be used in determining the reasonableness of the entry. No specific information was given to the court commissioner as reasons for the no-knock entry in this case. Specific information must be provided in order to justify a no-knock search. At least, without stating a complete list, the officers should inform the judge of the volume of drug

activity, if known; the amount of drugs on the premises, if observed; the nature of the drug observed, *i.e.*, powder, pill; and the manner in which the drug is stored, if known, *i.e.*, whether it is prewrapped or packaged at the time of sale. Additionally, a basic description of the premises should be included, which in this case would have specified whether there was running water in the cabin and where it was located, *i.e.*, in the room where the drugs were stored or sold, if known, and where the windows available for disposing of the drugs were located along with the nature of the windows, *i.e.*, covered by screens or storm windows, if known.

In other words, some specific information should be given to the judge or should be known by the police in order to make the unannounced entry reasonable under the circumstances. In order for that finding to be made, the circumstances must be known.

I am authorized to state that Justices LOUIS J. CECI and WILLIAM A. BABLITCH join in this concurring opinion.