STATE of Wisconsin, Plaintiff-Respondent,

v.

David C. FIELD, Defendant-Appellant.

Court of Appeals

*No. 84-1678-CR. Submitted on briefs January 15, 1985.—Decided March 20, 1985.*

(Also reported in 367 N.W.2d 821.)

For the defendant-appellant, the cause was submitted on the brief of *J. M. Davis,* of *Phillips, Davis & Finn,* of Waukesha.

For the plaintiff-respondent, the cause was submitted on the brief of *James Kieffer,* assistant district attorney, of Waukesha County.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. David C. Field appeals his judgment of conviction for criminal misdemeanor possession of THC.[1] Specifically, Field asserts that the arresting officers should have "knocked and announced" before entering his car. Because they did not knock, Field argues that the search of his car was illegal and all evidence seized should have been suppressed. We disagree. The knock and announce rule requires police officers seeking to enter a *dwelling* in execution of a warrant to identify themselves and their purpose and, except under special circumstances, to allow time for the door to be opened. *State v. Cleveland,* 118 Wis. 2d 615, 622, 348 N.W.2d 512, 516 (1984). Because an individual cannot reasonably have the same expectation of privacy in a car as in a home, the knock and announce rule does not apply under these facts. Therefore, the motion to suppress was properly denied, and the trial court is affirmed.[2]

---

[1] Sec. 161.41(3), Stats.

[2] This was originally a one-judge appeal since it arose from a misdemeanor conviction. Because the case decides a matter of

Both parties agree on the facts of this case. The defendant and others were seated in a parked car in the parking lot of a bowling alley. Two plainclothes officers testified that they observed smoke inside the defendant's vehicle. The officers also observed the defendant passing a pipe commonly used to smoke marijuana. Believing marijuana was being smoked by the occupants of the vehicle, the officers opened the doors of the vehicle without knocking or making any other announcement or signal. The officers then identified themselves and placed the defendant and the other occupants of the vehicle under arrest.

The question before us is a matter of law. We are asked to determine if the knock and announce rule applies to warrantless police entries of automobiles. Thus, we review the case *de novo. Green Scapular Crusade, Inc. v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525 (Ct. App. 1984).

We begin by reviewing the rationale behind the rule. "From earliest days, the common law drastically limited the authority of law officers to break the door of a house to effect an arrest. Such action invades the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller v. United States,* 357 U.S. 301, 306–07 (1958) (footnote omitted). Even the king's army could not "break the party's house" without first "signify[ing] the cause of his [*i.e.,* the sheriff's] coming, and to make request to open doors . . . ."[3]

Today, an individual's right of privacy within his home is guaranteed within the context of the United States

first impression, an order for a three-judge panel was entered pursuant to sec. 809.41(3), Stats.

[3] *Semayne's Case,* 5 Coke 91, 11 ERC 629, 77 Eng Reprint 194 (1603), *quoted in Miller v. United States,* 357 U.S. 301, 308 (1958).

Constitution's Fourth Amendment. The United States Supreme Court has stated: "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York*, 445 U.S. 573, 589–90 (1980), quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961).

Our state supreme court has echoed this opinion. While quoting a law review article by Messrs. Sonnenreich and Ebner,[4] our supreme court cited *Ker v. California*, 374 U.S. 23 (1963), as authority for the proposition that " 'the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures.' " *Cleveland*, 118 Wis. 2d at 623, 348 N.W.2d at 517.

The *Cleveland* court also said:

The rule of announcement addresses the manner in which a legitimate government intrusion is to take place. The rule serves three important purposes: (1) protecting the individual's privacy in the home; (2) decreasing the potential for violence by alerting the resident that the officer is legitimately on the premises; and (3) preventing the physical destruction of property by giving the resident the opportunity to admit the officer voluntarily.

*Id.* at 623, 348 N.W.2d at 517 (footnotes omitted).

The *Cleveland* court provides the framework for our analysis in this case.

In determining whether a person is entitled to challenge the constitutionality of a search and seizure, the inquiry must focus on whether "the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence

---

[4] Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem*, 44 St. John's L. Rev. 626, 643 (1970).

obtained during it." . . . The relevant question which must be answered in making this determination is whether the defendant had a legitimate expectation of privacy in the invaded place.

*Id.* at 633, 348 N.W.2d at 522 (citations omitted).

Thus, our first question is whether this defendant had a legitimate, justifiable, reasonable expectation of privacy. That determination "embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy' . . . . The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable." ' " *Smith v. Maryland,* 442 U.S. 735, 740 (1979), quoting *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The reasonableness of the "expectation of privacy" is given further definition by the balance which must be maintained between the intrusiveness of a particular law enforcement practice on fourth amendment interests and the promotion of legitimate governmental interests. *Texas v. Brown,* 460 U.S. 730, 739 (1983).

There are recognized distinctions in the appropriate levels of protection afforded by the fourth amendment. It is the "dwelling place" which receives "the highest level of protection" by the law. *State v. Monahan,* 76 Wis. 2d 387, 395, 251 N.W.2d 421, 424 (1977). Clearly, automobiles represent a much less significant privacy interest than "a dwelling place." The United States Supreme Court has said:

One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view.

*Cardwell v. Lewis*, 417 U.S. 583, 590 (1974).[5]

Other factors further reduce the notion that an individual has a subjective expectation of privacy in automobiles.

Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

*South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

In the case before us, no subjective expectation of privacy can be said to exist. Further, the degree of expectation of privacy which the defendant now claims is one which we conclude society is not prepared to recognize as reasonable. *See Smith v. Maryland*, 442 U.S. at 740. We determine that the knock and announce rule does not apply to automobiles as that term is defined under sec. 340.01(4), Stats.[6]

---

[5] It may be that a motorhome, or some similar vehicle, might serve as a residence or repository of personal effects so as to be accorded a level of protection higher than a mere automobile. This would depend on the facts of that case. Whether this level of protection would be of such degree as to make the use of the knock and announce rule reasonable, however, is subject to debate. This is because motorhomes are primarily designed as *temporary* dwellings. *See* sec. 340.01(33m), Stats. It is clear, though, that we do not have this case before us, and we will not discuss gratuitous observations unessential to the determination of the case.

[6] Section 340.01(4), Stats., states:

"Automobile" means any of the following:

(a) Type 1 is a motor vehicle designed and used primarily for carrying persons but which does not come within the definition of a motor bus, motorcycle, moped or motor bicycle.

Independent of the above analysis, we note that the illegal activity in this case occurred in "plain view" of the arresting officers. The defendant carried on illegal activity in a public place in "that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown,* 460 U.S. at 740. There is no reason a police officer should be precluded from observing as an officer what would be entirely visible to him as a private citizen. *Id.* The defendant cannot claim a privacy interest because of the "plain view" established by the facts.

*By the Court.*—Judgment affirmed.

(b) Type 2 is a motor vehicle capable of speeds in excess of 30 miles per hour on a dry, level, hard surface with no wind, designed and built to have at least 3 wheels in contact with the ground, a power source as an integral part of the vehicle, and a passenger and operator area with sides permanently enclosed with rigid construction and a top which may be convertible.