UNITED STATES of America, Plaintiff,

v.

James P. SINGER and Brian J. Halenka, Defendants.

No. 89–Cr–59.

United States District Court, E.D. Wisconsin.

Jan. 2, 1990.

James Santelle and Eric J. Klumb, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff.

William E. Callahan, Jr., Davis & Kuelthau, S.C., Milwaukee, Wis., for defendant Singer.

Robert J. Dvorak, Dvorak & Fincke, S.C., Milwaukee, Wis., for defendant Halenka.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

As anyone who watches television these days knows, the search of a home by police officers looking for drugs is not an activity for wimps. The police usually arrive with things like sledgehammers, bullhorns, tear gas, shotguns, and drawn 357 magnums. Usually the officers figuratively tiptoe up to the door of the house, say to themselves "Ready, set, go," and then knock loudly on the door, yelling "Police—search warrant." If the door isn't opened within a second or two (which it almost never is), the officers, at least on television, usually barge in and, after a few moments of pandemonium, "secure" the premises so the actual search can be conducted.

When drugs are found while executing a search warrant, a defendant charged with their possession often asks a judge to "suppress" their use at trial. In 99 out of 100 cases the defendant argues that probable cause to support the issuance of the search warrant did not exist. This is that 1 case out of 100 where the existence of probable cause is not in dispute. Rather, the issue in this case concerns the manner of entry into a premises to conduct a search. Before getting to the issue, a little background is in order.

James Singer and Brian Halenka are charged with conspiracy to manufacture, distribute, and possess amphetamine and methamphetamine with intent to distribute. Mr. Singer is also charged with possessing 3.2 kilograms of methamphetamine. The methamphetamine charged in the second count was seized during a search of Mr. Singer's residence at 1328 South 85th Street, West Allis, Wisconsin, on January 25, 1989.

The search of the Singer residence on January 25, 1989, began at 9:02 a.m. It was conducted by fifteen police officers armed with a search warrant issued the previous day by Milwaukee Circuit Court Judge Joseph P. Callan. In addition to authorizing the search, Judge Callan stated that entry into the Singer home could be done in the so-called "no-knock" fashion. That is, Judge Callan said the officers could enter the home without first announcing their presence and giving the occupants an opportunity to open the door.

Judge Callan's decision to permit a "no-knock" entry into the Singer home was based upon the following testimony:

Q (Asst. D.A.) And you are seeking a no-knock search warrant?

A (Police Officer Porter) Yes.

Q (Asst. D.A.) Why is it that you are seeking a no-knock search warrant?

A (Porter) Reasons are on the CAP or Community Against Pushers complaint, we received information that the subject at 1328 South 85th Street has involvement with handguns and it is my experience through working on the street, involvement with informants working undercover and recent conversations with other law enforcement officers that drug dealers fre-

quently are known to have weapons in their possession.

Q (Asst. D.A.) Are there any other reasons why you are seeking a no-knock search warrant?

A (Porter) For the safety of the officers involved.

Q (Asst. D.A.) Do you know whether—

A (Porter) And to prevent the disposal of possible evidence.

Q (Asst. D.A.) And when you say to prevent the disposal of possible evidence, what do you mean by that?

A (Porter) Oftentimes if it takes a longer amount of time to enter and secure a residence, there is a possibility of the substances to be destroyed by either flushing them down the toilet or the use of substances such as bleach to destroy the substances.

Q (Asst. D.A.) Detective Sage, do you have any other information that you can provide to the Judge to assist him in any way?

A (Sage) No.

Q (Asst. D.A.) Detective or, Sergeant Porter, do you have any other information that you could provide to the Judge to assist him in any way?

A (Porter) Not to my knowledge.

Transcript of Search Warrant Application Hearing of January 24, 1989, pp. 12–13.

■ A state search, as this one was, is governed by state law as long as the law applied does not violate the fourth amendment. *Ker v. California*, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). Wisconsin state law authorizes the use of "all necessary force" in the execution of search warrants. Wis.Stat. § 968.14. This provision has been construed to permit "no-knock" entry where justified by the facts of a particular case. *See State v. Suits*, 73 Wis.2d 352, 243 N.W.2d 206 (1976).

■ Although "no-knock" entries are clearly permitted under Wisconsin law, they are the exception, not the rule. As the Wisconsin Supreme Court noted in *State v. Cleveland*, 118 Wis.2d 615, 622, 348 N.W.2d 512. (1984).

[t]he requirement that police officers seeking to enter a dwelling in execution of a warrant must announce their presence (identity) and purpose and allow time for the door to be opened, known as the rule of announcement, has long been recognized in Anglo–American common law. (Footnote omitted.) The earliest common-law decision enunciating the rule apparently was in 1603 in *Semayne's Case*, 5 Coke Rep 91a, 91b, 11 Eng.Rul.Cas. 629, 631, 77 Eng.Rep. 194, 195, where the court said:

"In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors."

The rule of announcement addresses the manner in which a legitimate government intrusion into a private dwelling is to take place. As noted in *Cleveland*, the rule serves three important purposes: (1) protecting the individual's privacy in the home; (2) decreasing the potential for violence by alerting the resident that the officer is legitimately on the premises; and (3) preventing the physical destruction of property by giving the resident the opportunity to admit the officer voluntarily.

■ The rule requiring an announcement before entry also has federal constitutional implications. *Ker*, 374 U.S. at 46, 83 S.Ct. at 1636. Generally, the fourth amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within (or the officers themselves) are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is

being attempted. 374 U.S. at 47, 83 S.Ct. at 1636 (dissent by Justice Brennan).

■ Although one can easily get bogged down with splitting split hairs on whether there is any real difference between no-knock searches under state and federal law, I believe, ultimately, that the bottom line rule is really the same. As I see it, under both state and federal law an unannounced entry pursuant to a search warrant is invalid unless one of at least three exceptions reasonably exists. The exceptions are (1) the destruction of evidence, (2) a real likelihood of danger, or (3) the prevention of escape. Note, *No–Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970*, 55 Minn.L.Rev. 871 (1971). These exceptions make up "exigent" circumstances justifying a failure to knock and announce prior to entry. *See United States v. Garcia*, 741 F.2d 363 (11th Cir.1984).

Turning to Mr. Singer's motions, I note initially that the facts as presented to Judge Callan are remarkably similar to the facts presented in *Cleveland*, where the Wisconsin Supreme Court affirmed the court of appeals' order suppressing evidence seized during the execution of a no-knock search warrant.

In *Cleveland*, the no-knock search warrant had been issued and executed by law enforcement officers on the sole basis that drugs might be destroyed if the officers announced their presence. The supreme court found this to be insufficient reason to justify a no-knock entry. The court, speaking through Justice Abrahamson, held,

> [w]e reject a blanket approach in narcotics cases that the nature of the evidence itself—without more—allows the unannounced entry. The mere fact that drugs fall into a general category of materials that are by their nature capable of destruction does not justify unannounced entry to execute a search warrant. We conclude that law enforcement officers are justified in dispensing with the rule of announcement only if they have particular grounds in the given case to give them reasonable cause to believe

that the drugs will be destroyed. The essence of fourth amendment protection against unreasonable searches and seizures is that there must be a specific showing to justify state intrusion into a private dwelling.

118 Wis.2d at 628–629, 348 N.W.2d 512.

■ The court in *Cleveland* made it clear that there must be more presented to a court to obtain a no-knock search warrant and there must be more to justify a no-knock entry at the time of the execution of the search warrant than was present in this case. As the affidavits of James Singer and Teri Singer indicate, at the time of the execution of this search warrant, the Singers were in the bedroom on the second floor of their home at the time of the police entry. There was neither a knock on the door nor an announcement from the police officers outside as to why they were there prior to their breaking the door down with a sledgehammer. As the court stated in *Cleveland*,

> without further particular information such as, *e.g.*, the quantity of drugs expected to be discovered and that this amount is readily destroyed if announcement is made, or the preparations that have been made to facilitate the destruction of the drugs, or the defendant's destruction of drugs during a previous attempt to search the premises, an allegation that drugs have been sold on the premises is an inadequate reason to believe that the evidence will be destroyed if the police announce their presence prior to the search.

118 Wis.2d at 629–630, 348 N.W.2d 512.

In this case, Judge Callan relied on Sergeant Porter's statement, "[T]here is a possibility of the substances to be destroyed by either flushing them down the toilet or the use of substances such as bleach to destroy the substances." This is precisely the sort of general, unparticularized information that was found to be inadequate in *Cleveland*. And *Cleveland*, on this point, is certainly compatible with federal law.

The government argues here that there was more information given to Judge Callan than was given to the warrant-issuing

judge in *Cleveland.* It points to the CAP complaint on July 1, 1988, that "the subject at 1328 South 85th Street has involvement with handguns," as testified to by Sergeant Porter. Unfortunately for the government, this is not the sort of particularized circumstances that justifies an unannounced, forced entry into the home of a citizen.

In *Cleveland,* the court did note,

[t]he state argues that because drug dealers are often armed, the officers reasonably believed that their safety would be endangered if they announced their presence. The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. *The officer must have knowledge of specific facts that indicate that this particular person will conduct himself or herself in this manner when confronted by police.*

118 Wis.2d at 631 n. 16, 348 N.W.2d 512 (emphasis added).

In this case, the only information that the officers had about weapons was information of an exceedingly general nature given by an anonymous telephone tipster six months prior to the execution of the warrant. This stale and general information is of little value. The only recent information that the officers had was that which stemmed from two "garbage" searches and a "controlled buy" a few days before the warrant was applied for. There was *nothing* in the garbage which would in any way have suggested the presence of firearms in the home to be searched, much less that anyone in the home would use any weapons to resist the officers. Furthermore, there was nothing in the testimony presented by the officers to Judge Callan that in any way suggested weapons were involved in any way with the controlled buy.

I find that the forcible entry under the circumstances of this case was not justified. Mr. Singer's rights were violated (not to mention the rights of his wife and children) by the unconstitutional no-knock entry into and search of his home. The very facts presented in the reports concerning the application for and execution of the warrant demonstrate beyond doubt that there was insufficient basis for the no-knock warrant to be issued and, further, that no new information was obtained prior to the search itself to permit it to be executed in a no-knock fashion.

I also conclude that no "good faith" exception is present here that would save the search.

Lastly, I ADOPT the reasoning of Magistrate Bittner in his June 19, 1989, recommendation and find that the statements made by Mr. Singer during the search of his home are inadmissible in the government's case-in-chief.

Accordingly, the motions of Mr. Singer to suppress, consistent with this opinion, are GRANTED. Further proceedings in the case will be held on January 17, 1990, at 8:30 a.m.

SO ORDERED.