STATE of Wisconsin, Plaintiff-Respondent,

v.

Adam D. GREENE, Defendant-Appellant.†

Court of Appeals

*No. 91–1955–CR. Submitted on briefs March 26, 1992.—Decided October 29, 1992.*

(Also reported in 491 N.W.2d 181.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *James M. Bablitch* of Stevens Point.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   Adam Greene appeals from his convictions on one count of possession of THC (the active ingredient in marijuana) with intent to deliver, contrary to sec. 161.41(1m)(h)1., Stats., and two counts of possession of controlled substances, contrary to sec. 161.41(3m) and (3n), Stats., and from an order denying his motion to suppress evidence obtained pursuant to two search warrants. The issues are: (1) whether the police officers executing the first warrant violated the rule of announcement and (2) whether the appropriate remedy for the alleged violation would be to suppress the evidence obtained pursuant to both warrants.

We conclude that although the officers failed to announce their purpose in seeking entry to Greene's

apartment, the execution of the first warrant was reasonable under the circumstances. Therefore, we affirm.

## BACKGROUND

On October 16, 1989, the United States Postal Inspection Service in Tucson, Arizona, contacted officials in Milwaukee regarding a three-pound package which was addressed to Greene at his Stevens Point residence and which was thought to contain contraband. Virgil Guralski, a postal inspector from Milwaukee, then contacted Corporal Helminiak of the Stevens Point Police Department. Together they formulated a plan in which Guralski would deliver the package and Stevens Point police officers would seize it shortly thereafter. Helminiak procured a search warrant to carry out the plan.

On October 18, 1989, Guralski went to Greene's apartment to deliver the package. He entered the building through an unlocked door at street level. Next he climbed a winding stairwell to the second story. At the top of the stairwell, there was no landing, but there was a door which led to an L-shaped screened porch. The door had a solid wood panel in the lower half and a glass window in the upper half. Guralski knocked on the door and he observed John Reynolds, Greene's roommate, coming from around the corner to answer it. Guralski informed Reynolds that he had a package for Greene. Reynolds stated that Greene was home but that he would sign for it. The delivery was completed at approximately 12:15 p.m.

After the delivery, Guralski briefed Helminiak and the officers who were to serve the warrant as to the layout of the building—i.e., the back stairwell, the porch door, and the existence of an inner door around the corner which led to the apartment's living area. While

Helminiak recalls that Guralski mentioned knocking on one of the doors, there was no discussion of how long it took Reynolds to respond. Helminiak and others maintained a surveillance of all exits from the building until the warrant was served. In that time, they observed Jason Olson, a friend of Greene and Reynolds, entering the building, and they saw no one leave.

Shortly after 12:30 p.m., five police officers proceeded in single file up the stairs to the porch door. Officer Meronek, the first in line, claims that he knocked on the wooden half of the door four times and announced "police." He admits that neither the knocks nor the announcement was louder than normal. The officers then waited between five and fifteen seconds and heard no response or movement within that time. They then crashed through the door with a battering ram and ran across the porch toward the inner door, shouting "police" and "search warrant." Meronek estimated that the north-south corridor of the porch was twenty feet long while the east-west corridor leading to the inner door was five to seven feet long. He also said it took them no longer than two seconds to reach the inner door.

According to Olson, the first sounds that he, Greene, and Reynolds heard were glass shattering and falling to the ground. Reynolds went to check out the commotion and he was placed on the floor and handcuffed by Meronek and another officer upon entering the porch. The other three officers entered the apartment and handcuffed Greene and Olson. Helminiak then came in and seized the package from a closet located between the kitchen and living rooms. One of the side seams of the box had been opened and a can opener and a knife were resting on top of it.

Helminiak also discovered an additional bag containing an ounce of marijuana, a scale, and other drug

paraphernalia in plain view while searching for the package. As a result, he obtained a second warrant to recover additional evidence, and it was executed less than two hours after the first warrant.

Greene made a motion to suppress all evidence obtained under the two warrants because of the officers' failure to comply with the announcement rule in executing the first warrant. The motion was denied and Greene pled no contest after one of the charges had been reduced to a misdemeanor. Greene appeals from the judgment of conviction and the order denying his motion to suppress.

## RULE OF ANNOUNCEMENT

"In the execution of a search warrant, police officers must announce themselves and their purpose and, except under special circumstances, allow time for the door to be opened." *State v. Long*, 163 Wis. 2d 261, 265-66, 471 N.W.2d 248, 250 (Ct. App. 1991). While the United States Supreme Court has indicated that there are minimum constitutional requirements for the manner of executing a search warrant, the Court has yet to define these requirements with precision. *Id.* at 266, 471 N.W.2d at 250-51.

In our review of the order denying the suppression motion, we will sustain the circuit court's findings of fact unless they are clearly erroneous. *Id.* at 265, 471 N.W.2d at 250. However, we will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *Id.* The inquiry on review is whether upon an objective analysis of the circumstances confronting the officers in executing the warrant, we can conclude that the entry was justified and reasonable. *Id.*

Greene cites three defects in the warrant's execution. He first argues that it was not reasonable for the police to infer that they had been denied admission when no response came from within the apartment. Greene claims that if the police had intended to elicit a response, Meronek should have rapped loudly on the door and yelled "with all the lung power he could command," given the layout of the porch and the fact that there were two doors for sound to penetrate. Greene also states that had the police rung the doorbell as the sign on the door requested,[1] "[a]ll the issues before this court probably would have been avoided."

We reject this argument. With respect to ringing the doorbell, Greene cites no authority, nor are we aware of any, which requires the police to ring the bell when serving a warrant. Also, we conclude that it was reasonable for the police to expect a response to their knocks and announcement. The officers knew that both Greene and Reynolds were home because Reynolds told Guralski so less than twenty minutes earlier when the package was delivered. From the time of day, the police could infer that both residents were up and about. In addition, Guralski gave no indication in his briefing that it took any special effort such as knocking repeatedly or ringing the doorbell in order to get Reynolds' attention. Finally, Meronek knocked at least four times on the door. While a single knock may go unnoticed, it is reasonable to expect that the occupants would hear repeated knocks.

Greene next contends that the police did not allow sufficient time for either him or Reynolds to open the

[1] Guralski and Officers Meronek and Zdroik who led the squad had no recollection of a doorbell near the porch door. Olson testified as to the existence of the sign and that, although he did not use the bell, it worked on a regular basis.

door. The trial court found that the officers waited between five and fifteen seconds before crashing through the door. This finding is supported by the record and is not disputed by Greene. Greene relies instead on Meronek's agreement on cross-examination with the statement that the officers did not "allow any opportunity to reasonably come to the door and answer [their] knock."

We noted in *Long* that courts have refused to set a strict time limit for the announcement rule because of the myriad of circumstances that could confront an officer serving a warrant. 163 Wis. 2d at 266, 471 N.W.2d at 251. Under the circumstances in this case, we conclude that the five-to-fifteen-second delay was reasonable for several reasons. First, in briefing the officers, Guralski gave no indication that it took an exceptional amount of time for Reynolds to answer the door. Second, as noted above, the officers knew that both Greene and Reynolds were home and could infer from the time of day that both were awake and able to come to the door. Third, there is no evidence in the record that the officers knew beforehand the exact location of the inner door or the precise distances involved.[2] Finally, Meronek's concessions reflect the benefit of hindsight. But hindsight is not relevant to our analysis; we are only concerned with the circumstances which confronted the officers at the time of execution.

Finally, Greene argues that the officers' failure to state their purpose for seeking entry violated the

___

[2] Meronek had responded to a fight at Greene's apartment at least one year prior to the execution of the warrant. While he talked with individuals other than Greene and Reynolds on the screened porch, he did not learn at that time where the inner door was located.

announcement rule and rendered the search unreasonable. It is undisputed that the police stated nothing about a search warrant prior to entering the porch. However, this omission does not necessarily compel the conclusion that the search was unreasonable. As the supreme court has noted, strict adherence to the rule is not required in all cases and any deviation is judged on the particular circumstances of the case. *State v. Cleveland*, 118 Wis. 2d 615, 625, 348 N.W.2d 512, 518 (1984).

In *Jackson v. United States*, 354 F.2d 980 (1st Cir. 1965), the defendant claimed he did not hear the police knock or announce their presence even though he could have reasonably been expected to hear both. While the police failed to state that they had an arrest warrant, the court held that the defendant could not complain of the deficiency because it had no prejudicial effect.

In the case before us, no one in Greene's apartment heard Meronek knock or announce the officers' presence. Moreover, we are convinced that there would have been no difference in the occupants' response if Meronek had uttered the two additional words, "search warrant." Because the cases are so similar, we have decided to follow *Jackson*. Therefore, we conclude that because the officers' failure to state their purpose had no prejudicial effect, it did not render the execution of the search warrant unreasonable.

Because we conclude that the execution of the warrant was reasonable under the circumstances, we do not reach the issue of whether the independent source exception to the exclusionary rule prevents suppression of the evidence.

*By the Court.*—Judgment and order affirmed.

51

SUNDBY, J. (*dissenting*). This is a curious case. At 12:15 p.m., a postal inspector working with the Stevens Point Police Department delivers a three-pound box to the Adam Greene residence at 1509A Wisconsin Avenue, Stevens Point. He accomplishes the delivery by entering the unlocked back door of the apartment building, walking up steps to a screened porch, and knocking on the door to the porch. An individual responds immediately to his knock, signs for the package, and it is delivered. The postal inspector then tells the police how to obtain access to the door to the screened porch.

Fifteen minutes later, the police, without any change in circumstances, find it necessary to batter down the door to execute their warrant. The police do not claim that they heard or observed any activity within the apartment which justified their use of this means of access. I conclude that this search violated the fourth amendment's prohibition against unreasonable searches and seizures. I therefore respectfully dissent.

"[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . .." *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972). "[R]igid restrictions upon unannounced entries are essential if the Fourth Amendment's prohibition against invasion of the security and privacy of the home is to have any meaning." *Ker v. California*, 374 U.S. 23, 53 (1963) (Brennan, J., writing separate opinion for four members of the court).

The court recognizes that in the execution of a search warrant, police officers must announce themselves and their purpose and, "*except under special circumstances,* allow time for the door to be opened." *State v. Long*, 163 Wis. 2d 261, 265-66, 471 N.W.2d 248, 250 (Ct. App. 1991) (emphasis added). However, the court does not find any "special circumstances" which justi-

fied the police in battering in the porch door to obtain access to the apartment and in failing to announce their purpose. Our decision today signals a regression to the time when George III's revenue agents answered to no one when they breached the doors of the colonists' homes. I refuse to join in that regression.