OLLINGER, and wife, Appellants, v. GRALL, and others, Respondents.

*No. 75–346. Submitted on briefs September 6, 1977.—Decided October 18, 1977.*
(Also reported in 258 N. W. 2d 693.)

For the appellants the cause was submitted on the briefs of *James R. Mattison* and *Becker, Kinnel, Doucette & Mattison* of Milwaukee.

For respondents Kenneth R. Grall and Planet Insurance Company the cause was submitted on the brief of *Robert A. Slattery, Proctor D. Robinson* and *Frisch, Dudek & Slattery, Ltd.* of Milwaukee.

For respondents Gordon J. Plato and Insurance Company of North America the cause was submitted on the brief of *Merten, Connell & Sisolak, S. C.,* of Milwaukee.

BEILFUSS, C. J.   The accident in question took place on November 3, 1973, shortly after 7 p.m., on North

Teutonia Avenue in the City of Milwaukee. Teutonia Avenue is a divided street with a grassy median strip surrounded by a concrete curb. There are three traffic lanes on each side of the median strip—a right lane that can be used for parking, a center lane, and a left lane adjacent to the median strip.

The plaintiff, Robert J. Ollinger, was a passenger in a vehicle owned and driven by the defendant, Gordon J. Plato. Ollinger and Plato had been friends and employees of the Schlitz Brewing Company for many years. Both lived in Menomonee Falls, Wisconsin and were returning to their homes after work at the time of the accident.

There are inconsistencies and contradictions in the testimony, but the following is an adequate statement of the facts:

Plato was driving his 1969 Buick Skylark. Ollinger was in the right front passenger seat. Plato was traveling in the center traffic lane, deviated to the left lane adjacent to the curb, and struck the curb. A tire on the left side blew out. It is not clear whether the tire blew out before or after it struck the curb. Plato stopped his car at the curb line and got out to inspect it. His lights were on but there is a dispute as to whether his flashing stop lights were on. Plato stated the front tire was flat and was going to look at the rear left tire. Ollinger then got out the right front door of the car.

Ollinger testified that just before he got out of the car there was no traffic immediately to the rear. When he got out he noticed a car coming from the rear in the same lane. He waved his hat or his arms. He stated he turned around to walk away; an eyewitness said he continued to stand next to the right door facing the oncoming car and waving his arms for about ten seconds and until he was struck by the oncoming car.

The eyewitness testified the car coming up from the rear stayed in the left lane at about the speed limit of

40 miles per hour until it was about 20 to 25 feet from the Plato vehicle. It then turned to the right. This car struck the door of the Plato car and also struck Ollinger, throwing him in the air for about 10 feet and injuring him.

The car that struck the Plato vehicle and Ollinger was a 1973 Chevrolet Station Wagon driven by the defendant, Kenneth R. Grall, and owned by his father. Grall was seventeen years old and he, too, was on his way home from work.

Grall testified he turned onto Teutonia Avenue and into the left lane about 150 yards from the scene of the accident at a speed of about 15 miles per hour. There were no obstructions to his vision and he could see about 400 yards. He noticed the Plato vehicle when he was about 100 yards from it. The tail lights of the Plato vehicle were on but he could not determine if the car was parked or moving. His speed increased to about 35 miles per hour by the time he was 50 yards from Plato's car. At 30 yards he came to the conclusion it was parked. He slowed down to 25 miles per hour by the time he was 20 yards away and then turned gradually to the right. He did not use his brakes; did not see Ollinger until the front of his car was even with the back of Plato's, and did not see him wave his arms. After he hit the door of Plato's car he put on his brakes and struck Ollinger.

The jury found Ollinger causally negligent, Plato causally negligent, and Grall negligent but not causally so. In the comparative negligence question, 50 percent of the negligence was attributed to the plaintiff Ollinger, 38 percent to the defendant Plato, and 12 percent to the defendant Grall.

The jury awarded Ollinger $8,000 for his personal injuries; the court found his medical expenses in the amount of $3,157.80, and $4,465 for loss of earnings. Nothing was awarded to Mary Ollinger, the wife of

Robert, for loss of services, society and companionship of her husband.

The trial court in ruling on motions after verdict changed the answer to the cause question of Grall from "No" to "Yes" and directed judgment on the verdict dismissing the complaint of Robert and Mary Ollinger.

The plaintiffs-appellants raise several issues on appeal. Their principal argument is that it was error for the trial court to change the causation answer concerning the negligence of the defendant-respondent Grall and to fail to order a new trial because of the inconsistent verdict.

The answer in the verdict, which attributed 12 percent of the negligence to Grall, was inconsistent with the answer which found his negligence was not a cause of the accident.

The appellants assert that the trial court did not conform to rules for inconsistent verdicts as set forth in *Statz v. Pohl*, 266 Wis. 23, 62 N.W.2d 556, 63 N.W.2d 711 (1954). Those rules are as follows:

"(1) If the issue of causal negligence is for the jury and the party inquired about is exonerated but the injury in its comparison of negligence erroneously attributes to such party some degree of causal negligence, the verdict is inconsistent, and a new trial must be granted;

"(2) If it be determined that the party inquired about is free from causal negligence as a matter of law and the jury has exonerated him but has also attributed to him some degree of causal negligence, then the court should strike the answer to the question on comparison as surplusage and grant judgment accordingly. (p. 29)

"'(3) If but one element of negligence is submitted to the jury and the court can find as a matter of law that the party inquired about in the question is guilty of causal negligence and the jury finds that he is not, and in answer to the question on comparative negligence attributes to him some degree of causal negligence, the court should change the answer to the question which inquires as to his conduct from "No" to "Yes" and per-

mit the jury's comparison to stand with judgment accordingly.' " (p. 32a)

The contention is that rules (2) and (3) do not apply and that a new trial should have been ordered under rule (1). Rule (2) does not apply because the trial court, as expressed in its ruling on motions after verdict, was clearly of the opinion that Grall was negligent and his negligence was a cause of the accident as a matter of law.

Nor does rule (3) as written apply. Although an ultimate fact form of verdict was used which required only one answer to the inquiry as to whether Grall was negligent, the jury was instructed on two elements of negligence as to Grall, namely lookout and management and control. Rule (3) of *Statz v. Pohl, supra,* does not permit the trial court to change the "causal negligence" question from "No" to "Yes" where more than one element of negligence is submitted to the jury. If *Statz v. Pohl* is to be followed, rule (1) would apply and a new trial should be ordered. Recent cases of *Hillstead v. Shaw,* 34 Wis.2d 643, 150 N.W.2d 313 (1967); *Seif v. Turowski,* 49 Wis.2d 15, 181 N.W.2d 388, 183 N.W.2d 28 (1970); and *Jahnke v. Smith,* 56 Wis.2d 642, 203 N.W.2d 67 (1973), cite *Statz v. Pohl* with approval.[1]

Our principal concern is whether rule (3) of *Statz v. Pohl, supra,* should be reconsidered. We believe it should. In 1954, when *Statz v. Pohl* was decided, the statute governing special verdicts[2] did not provide for ultimate fact

[1] *Jahnke v. Smith,* 56 Wis.2d 642, 203 N.W.2d 67 (1973), did not order a new trial because of waiver which is also raised in this case but in our opinion is not applicable because the waiver is not to the detriment of the party waiving. In *Hillstead v. Shaw,* 34 Wis.2d 643, 150 N.W.2d 313 (1967), the principal concern was reviewing and order for a new trial in the interest of justice and the special rules of review which apply to those cases.

[2] "270.27 *Special verdicts.* The court may, and when requested by either party, before the introduction of any testimony in

verdicts. In 1961 the statute was amended by virtue of a court rule[3] to permit the submission of an ultimate fact verdict (whether the party named was negligent without reference to specific acts or failure) in the discretion of the trial court. The statute was further amended when the Code of Procedure was adopted and now appears as sec. 805.12(1), Stats.[4]

his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. The court may also direct the jury, if they render a general verdict, to find upon particular questions of fact." (Stats. of 1953)

[3] "For the purpose of simplifying pleading, practice and procedure and promoting the speedy and just determination of litigation in the courts of the state of Wisconsin, and after notice and hearing,

*It is ordered:* That pursuant to section 251.18, Wisconsin Statutes, the following rules relating to pleading, practice and procedure in judicial proceedings in the courts of the state of Wisconsin, be and the same are hereby adopted and promulgated, to take effect on June 1, 1961.

"Section (Rule) 270.27 is amended to read as follows:

"270.27. *Special verdicts.* The court may, and when requested by either party before the introduction of any testimony in his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. It shall be discretionary with the court whether to submit such questions in terms of issues of ultimate fact, or to submit separate questions with respect to the component issues which comprise such issues of ultimate fact. In cases founded upon negligence, the court may submit separate questions as to the negligence of each party, and whether such negligence was a cause without submitting separately any particular respect in which the party was allegedly negligent. The court may also direct the jury, if they render a general verdict, to find upon particular questions of fact." (11 Wis.2d v)

[4] "805.12 Special verdicts. (1) USE. Unless it orders otherwise, the court shall direct the jury to return a special verdict.

Underlying reasons for the adoption of the ultimate fact form of verdict were to prevent, in a sense, a cross-examination of the jury and to avoid inconsistent verdicts which required new trials to the expense of the litigants and the burden on the courts.

In the case at hand there is credible evidence that would allow the jury to find that Grall was negligent as to either lookout or management and control, or perhaps both. The observations of the eyewitness that Grall did not attempt to turn out of the left lane until he was 20 to 25 feet from the lighted Plato vehicle could lead to a finding of negligent lookout. Grall's testimony that he

The verdict shall be prepared by the court in the form of written questions relating only to material issues of ultimate fact and admitting a direct answer. The jury shall answer in writing. In cases founded upon negligence, the court need not submit separately any particular respect in which the party was allegedly negligent. The court may also direct the jury to find upon particular questions of fact.

"(2) OMITTED ISSUE. When some material issue of ultimate fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, the issue shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on the issue shall be deemed a waiver of jury trial on that issue.

"(3) CLERK'S ENTRIES AFTER VERDICT. Upon receiving a verdict, the clerk shall make an entry on the minutes specifying the time the verdict was received and the court's order setting time for motions after verdict under s. 805.16. The verdict and special findings shall be filed.

"*History:* Sup. Ct. Order, 67 W (2d) 702; 1975 c. 218.

"**Judicial Council Committee's Note, 1974:** Sub. (1) is based on a recognition that in Wisconsin practice, the special verdict is the rule and not the exception. A party desiring the use of a general verdict should be required to make an appropriate motion. Section 270.27, on which this section is generally based, contains rather restrictive language on the use of special verdicts and thus is not expressive of the actual practice in the state presently.

"Sub. (2) is substantially equivalent to s. 270.28. [Re Order effective Jan. 1, 1976]"

saw the Plato vehicle when he was 100 yards from it, increased his speed and realized it was parked when he was 30 yards from it with nothing to prevent him from braking his car and turning to the right to avoid the collision could lead to a finding of negligent management and control.

The argument often made, which in part resulted in the adoption of the ultimate fact form of verdict, was that if a driver was negligent as to lookout so as not to see the hazard or not in time to be able to do anything about it, his negligence was lookout and not negligent management and control. If the lookout was so faulty that the driver could not see the hazard, management and control did come into play.

As stated above, dependent upon which version of the facts the jury adopted, Grall could have been found negligent of lookout or management and control. The trial judge concluded that Grall was negligent in some respect and that this negligence was a cause of the accident as a matter of law. Whether Grall's negligence was as to lookout or management and control, it was a contributing factor to the accident and resulting injuries. We agree Grall was negligent—it was a contributing factor and the jury apportioned his negligence as it should have. We do believe that under circumstances such as this, where the trial court was clearly of the opinion that the driver was negligent and that the negligence was a cause, that it should be permitted to change the cause answer from "No" to "Yes."[4a] This is so even though more than one element of negligence is submitted to the jury. Consideration of comparable fact situations, it seems certain, is one of the reasons the ultimate fact form of verdict was adopted.

[4a] *See Kinsman v. Panek*, 40 Wis.2d 408, 162 N.W.2d 27 (1968); *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.*, 29 Wis.2d 620, 139 N.W.2d 595.

Rule (3) of *Statz v. Pohl*, 266 Wis. at 32a, is modified to reflect this opinion. Rule (3) of *Statz v. Pohl* was set forth in the Per Curiam following a motion for rehearing. We now reject rule (3) as it appears in the Per Curiam and adopt rule (3) as it appears in the original opinion and is as follows:

"(3) If the court can find as a matter of law that the party inquired about is guilty of causal negligence and the jury finds that he is not and in the question on comparative negligence attributes to him some degree of causal negligence, the court should change the answers to the questions which inquire as to his conduct from 'No' to 'Yes' and permit the jury's comparison to stand with judgment accordingly."

We affirm the order of the trial court wherein it changes the cause answer concerning Grall's negligence from "No" to "Yes."

Other errors assigned by the appellants are an allegedly defective verdict and instructions, failure to give an emergency instruction, and a perverse verdict.

The plaintiffs, in their motions after verdict, moved for a new trial upon three grounds: (1) That the verdict was inconsistent; (2) that the damage award was so inadequate as to render the verdict perverse; and (3) in the interest of justice.

The plaintiffs-appellants did not object to the instructions, either during or after the trial, nor were the instructions made the basis for a new trial in their motions after verdict. Likewise they did not object to the form of the verdict. In motions after verdict they did not object to the form of the verdict. Their objection was that the findings of the jury in the verdict were inconsistent. The plaintiffs-appellants requested an emergency instruction. This request was denied. Failure to give the emergency instruction was not made a basis for a new trial in motions after verdict.

This court has held innumerable times that failure to object during the trial when the error, if it be such, could have been corrected before the return of the verdict, and the failure to specify errors in trial in motions after verdict when a new trial could have been ordered by the trial court without the necessity of an appeal constitutes a waiver of such objections. Although this court can consider the objections, they are not reviewable as a matter of right.[5]

We have reviewed the record, including the verdict and the instructions. We do not believe the verdict was defective nor the instructions confusing.

A party is not entitled to an emergency instruction if as a matter of law it can be said that his or her conduct created or contributed to the emergency. Here the trial court, after hearing all of the evidence, concluded that the plaintiff Ollinger was negligent. The evidence reveals Ollinger placed himself in a position of danger when he got out of the Plato vehicle and saw the Grall vehicle approaching. He had at least five seconds to remove himself from this position. He did not do so. The trial court could conclude on this evidence that the plaintiff was negligent as a matter of law and not entitled to the emergency instruction. The trial court's conclusion was subsequently fortified by the jury's finding of 50 percent negligence on the part of Ollinger.

The appellants' final contention is that the damage awards by the jury—$8,000 to Robert J. Ollinger and no

[5] *Behning v. Star Fireworks Mfg. Co.,* 57 Wis2d 183, 203 N.W. 2d 655 (1973); *Rowden v. American Family Ins. Co.,* 48 Wis.2d 25, 179 N.W.2d 900 (1970); *Menge v. State Farm Mut. Automobile Ins. Co.,* 41 Wis.2d 578, 164 N.W.2d 495 (1969); *Johnson v. Johnson,* 37 Wis.2d 302, 155 N.W.2d 111, 156 N.W.2d 492 (1967); *Geis v. Hirth,* 32 Wis.2d 580, 146 N.W.2d 459 (1966).

money to his wife Mary, indicates that the verdict was perverse and that a new trial should have been granted. One seeking to overturn a jury damage award shoulders a heavy burden:

"If there is any credible evidence which under any reasonable view supports the jury finding as to damages, especially when the verdict has the approval of the trial court, this court will not disturb the finding. Even when it still appears that the award is low, this court will not interfere with the jury's finding, unless the award is so unreasonably low as to shock the judicial conscience." *Puls v. St. Vincent Hospital,* 36 Wis.2d 679, 693, 154 N.W.2d 308 (1967). *See also: Hein v. Torgeson,* 58 Wis.2d 9, 205 N.W.2d 408 (1973).

The jury's award to Robert J. Ollinger was limited to damages by pain, suffering and disability. He was awarded $8,000. The court also awarded him $3,157.80 for medical expenses and $4,465 for loss of earnings. When viewed in this perspective, the $8,000 award does not seem to low, nor does it shock the conscience of the court.

The appellant Robert Ollinger's physician testified that Ollinger had fewer problems than was usual and his recovery was remarkable. Moreover, as demonstrated by respondents, much of the evidence presented by appellants to prove the severity of the disability was contradicted, disproven, or placed under suspicion. For example, Mrs. Ollinger testified that her husband used to go bowling with their children before the accident and that he was unable to do so afterwards. On the other hand, Ollinger testified that he had not bowled for years and had not even attempted to since the accident. There is additional evidence in the record that casts much doubt on Mrs. Ollinger's claims for damages which the jury could accept in support of its findings of no dam-

ages. We cannot conclude the jury was perverse. In any event this question becomes academic because of our conclusion that the order of the trial court that the complaint be dismissed should be affirmed.

*By the Court.*—Judgment affirmed.