STATE of Delaware, Plaintiff,

v.

Franklin C. FORAKER, Defendant.

Nos. I75–02–0882, I75–02–0883.

Superior Court of Delaware, New Castle County.

Submitted March 24, 1982.
Decided May 19, 1982.

Charles M. Oberly, III, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

Eugene J. Maurer, Jr., Wilmington, for defendant.

WALSH, Judge.

The defendant, Franklin C. Foraker, moves for post-conviction relief under Superior Court Criminal Rule 35(a) five years after his trial and conviction for First Degree Murder. That conviction was ultimately affirmed by the Delaware Supreme Court. *Foraker v. State*, Del.Supr., 394 A.2d 208 (1978). An evidential hearing was conducted on the motion, followed by briefing. This is the ruling on the two issues which are extant: (1) whether the State improperly impeached the defendant

through use of testimony given by him during a voir dire hearing on the question of voluntariness, and (2) whether his decision to testify at trial was the result of a knowing waiver of his right to remain silent, in view of the impeachment to which he was subjected.[1]

I

The thrust of defendant's motion can best be understood in the context of the evidence presented at trial, particularly that tendered by the State. The defendant had been charged with the strangulation death of Margaret Essick. The State's proof at trial was strong. It properly used as evidence in its case in chief five separate confessions made to various police agencies in Delaware in which the defendant stated that he killed the victim and threw her body over a bridge. Also submitted as evidence was the testimony of a co-defendant, Barbara Jordan, who gave an eyewitness account of the killing.

During the State's case in chief, the Court was required to conduct a voir dire hearing on the admissibility of two confessions—the sixth and seventh—which the defendant allegedly made in Pennsylvania, at the Avondale State Police Barracks. These confessions were suppressed as being violative of defendant's *Miranda* rights. The defendant did not testify at this voir dire hearing. Thereafter, a second voir dire hearing was held on the issue of the voluntariness of these statements, under the theory that they might be used for impeachment purposes, even if violative of *Miranda*, so long as they were voluntary. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Significantly, the defendant testified at this hearing. The Court ruled that the Pennsylvania statements were voluntary and could be used for impeachment purposes if the defendant testified before the jury.

---

1. Two other grounds underlying the motion as originally framed were abandoned by defendant before briefing: that the admissibility of defendant's "Pennsylvania" confessions should have been tested by Pennsylvania law and the failure of the defendant's trial counsel to object to evidence concerning the role of a third party who was also implicated in the killing.

When the defendant testified before the jury he denied his guilt. The State in cross-examination confronted him not only with the statements he allegedly made at the Avondale police station, but also with testimony he had given at the voluntariness hearing. Defendant now argues that the use of his testimony for impeachment purposes constitutes reversible error.

[redacted] Preliminarily, defendant contends that, constitutional considerations aside, his testimony at trial "did not significantly change" from that given at the voluntariness hearing and thus there were no prior inconsistent statements which might serve as a tool for impeachment. A fair reading of the transcripts of the hearing and the trial indicates that there was some change, though it was not substantial, in the defendant's testimony. At various points at both the hearing and trial the defendant stated categorically that he did not make any incriminating statements to the Pennsylvania police. At certain other points the defendant stated that it was possible that he made such statements, but that he could not specifically recall ever making them. To this minor extent there was inconsistency in his testimony, and under the usual evidential standard, such inconsistency may be properly pursued in cross-examination. See, McCORMICK ON EVIDENCE, § 37, p. 72 (Hornbook Series 2d Ed.).

[redacted] Defendant next argues that if his voir dire testimony was, in fact, inconsistent with his trial testimony, such testimony should not have been used for later impeachment purposes since the State was thereby able to present to the jury the substance of statements previously ruled inadmissible as a matter of law. The United States Supreme Court has never expressly ruled on the question of whether statements made at a suppression or voir dire hearing of this kind may form the basis for later impeachment. It is, of course, settled that such statements may not be used in the State's case in chief. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). But pre-arrest [2]—as opposed to voir dire hearing—statements may be used to later impeach a defendant at trial, so long as they are voluntary. *Harris, supra; Hass, supra.* In this regard, there is no practical reason to distinguish between pre-arrest and voir dire hearing statements. Voir dire hearing testimony of the type here at issue, made in a courtroom setting and under oath, will usually be as reliable, if not more reliable, than statements made in the course of an investigation and arrest.

[redacted] The United States Supreme Court has, moreover, become increasingly resistant to attempts to enlarge the scope of the exclusionary rule. The rule is acknowledged to be a limitation on the use by the prosecution of challenged evidence in its case in chief, but to forbid its use as impeachment evidence would impair "the integrity of the factfinding goals of the criminal trial." *United States v. Havens,* 446 U.S. 620, 627, 100 S.Ct. 1912, 1917, 64 L.Ed.2d 559, 566 (1980). As the Court stated in *Harris,* in the context of pre-arrest statements, "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226, 91 S.Ct. at 646, 28 L.Ed.2d at 5. There is no good reason not to apply this same logic to the defendant's voir dire testimony directed to the issue of voluntariness. Other courts have so held, and the defendant cites no case to the contrary. *People v. Sturgis,* 58 Ill.2d 211, 317 N.E.2d 545 (1974); *Nelson v. State,* Tex.Cr.App., 607 S.W.2d 554 (1980); *State v. Barton,* Mo.App., 593 S.W.2d 262 (1980); *Gray v. State,* 43 Md.App. 238, 403 A.2d 853 (1979); *People v. Douglas,* 66 Cal. App.3d 998, 136 Cal.Rptr. 358 (1977).

2. The term pre-arrest is perhaps inartful. A more accurate designation would be "pre-indictment" since such statements might be secured by the police at various times in the investigating process both before and after the actual arrest of the defendant and still run afoul of the custodial test of *Miranda.* In both *Harris* and *Hass* the disputed statements were made after the defendant's arrest.

Admittedly, the ability of the State to impeach the defendant in this fashion may serve as a deterrent in his decision to testify or exercise his Fifth Amendment privilege against self-incrimination. But the State is not free to confront the defendant with substantively inadmissible statements until he first defines the scope of cross-examination by asserting the contrary before the jury. Once he does so, the State's questioning, as here, may be considered "otherwise proper impeachment" *United States v. Havens, supra*, 446 U.S. at 627, 100 S.Ct. at 1916, 64 L.Ed.2d at 566.

## II

■ Defendant's second contention is that he would not have testified before the jury had he known that the Pennsylvania statements could be used against him for impeachment purposes. Because he labored under such ignorance, he argues, his waiver of the right to remain silent was not voluntary and knowing.

The defendant is not here claiming that he was unaware of his privilege not to testify. He maintains, however, that in making the decision to testify he was not aware that the Pennsylvania statements, which up to that point had been ruled substantively inadmissible, would be presented to the jury through cross-examination. While the legal implications of defendant's claimed ignorance are considerable, his argument is born of hindsight. The evidence presented at the hearing on the present motion simply does not support his argument. Defendant was represented at trial by two experienced and knowledgeable attorneys, one of whom had recently served as Chief Deputy Attorney General. Both attorneys testified that they had on several occasions, before and during trial, discussed with the defendant the importance of his trial testimony. Indeed, they advised the defendant at an early stage that his testimony was essential because of the nature of the evidence the State would be presenting at trial.

Defendant's trial counsel further testified that when in the course of the trial the Pennsylvania statements were ruled inadmissible as part of the State's case in chief but, nevertheless, voluntary, the significance of the ruling was apparent to them. They, in turn, discussed with the defendant the impeaching value of the statements and, in the words of one, were "satisfied that he understood what could happen with the use of those statements upon cross-examination if he took the stand." Although defendant now asserts that the implications of his testifying were not fully explored, the explanation of his counsel is the more credible and is clearly consistent with the sequence of the rulings made during trial. The ruling that the Pennsylvania statements were admissible for impeachment purposes was made in defendant's presence on the day before the presentation of the defendant's case. There was thus a full opportunity for defendant and his counsel to confer concerning the effect of that ruling. The evidence is clear that they did so. I conclude, therefore, that at the time he elected to testify defendant was on notice concerning the State's ability to confront him with the Pennsylvania statements which were otherwise inadmissible.

Since the State's impeachment of defendant was within the limits of permissible cross-examination after a knowledgeable election of the defendant to testify in his own behalf, he cannot now complain that his Fifth Amendment rights have been violated. The Motion for Post Conviction Relief must be denied.

IT IS SO ORDERED.