STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. SCHULTZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 88–0389–CR. Argued September 6, 1989.—Decided November 28, 1989.*

(Also reported in 448 N.W.2d 424.)

For the defendant-appellant-petitioner, there were briefs by *Robert S. Duxstad,* and *Duxstad, Vale & Bestul Law Offices,* Monroe, and oral argument by *Daniel P. Bestul.*

For the plaintiff-respondent the cause was argued by *Sharon Ruhly,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of a decision of the court of appeals, *State v. Schultz,*   148 Wis. 2d 370, 435 N.W.2d 305 (Ct. App. 1988), affirming a judgment of conviction and an order denying post-conviction motions in the circuit court for Green county, Judge William D. Johnston. The jury found the defendant guilty of the first-degree murder of his wife.

The only issue before this court is whether a prosecutor's use of a defendant's *Goodchild*[1] hearing testimony in an effort to impeach that defendant's trial testimony violates the privilege against compelled self-incrimination of either the fifth amendment to the United States Constitution or article I, section 8(1) of the Wisconsin Constitution.[2] We conclude that a prose-

---

[1]*State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965), *cert. denied,* 384 U.S. 1017 (1966). Under the procedure established in *Goodchild,* the admissibility of a defendant's statements is determined at a separate hearing before the trial judge.

[2]The fifth amendment to the United States Constitution provides, in part, as follows:

> No person shall be . . . compelled in any criminal case to be a witness against himself . . ..

Article I, section 8(1) of the Wisconsin Constitution provides, in part, as follows:

cutor may attempt to impeach a defendant's trial testimony with that defendant's *Goodchild* hearing testimony without violating either the federal or the state privilege against compelled self-incrimination.

On November 19, 1985, the defendant, James R. Schultz (Schultz), and his wife, Nancy M. Schultz, were found lying next to each other on the floor of their garage, which was filled with carbon monoxide. Schultz was breathing, but unconscious; his wife was dead. The autopsy revealed that the cause of his wife's death was carbon monoxide poisoning, although she had received at least two blows to the head prior to her death, which may have rendered her unconscious. A broken flashlight was found near the couple.

The Schultzes' five-year old daughter was at the Schultz home at the time of her mother's death. On direct examination at trial, the daughter testified that her mother and father were fighting in the garage, that her father hit her mother, and that when she peeked into the garage she saw her mother lying on the garage floor with her eyes closed and her father sitting on the garage floor with his eyes open.

On November 20, 1985, the day after Nancy Schultz's death, Investigator Randall Roderick of the Green County Sheriff's Department conducted two interviews of Schultz in Schultz's intensive care unit hospital room. During both interviews, which were held within approximately one and one-half hours of each other, Roderick asked Schultz about the events surrounding his wife's death. Some of the answers Schultz gave in the second interview were inconsistent with his answers from the first interview.

No person . . . may be compelled in any criminal case to be a witness against himself or herself.

After being charged with first-degree intentional homicide in the death of his wife, Schultz filed a motion to suppress the statements he made to Investigator Roderick, arguing in part that they were involuntary and that they were obtained without a valid waiver of his *Miranda*[3] rights. On March 26 and 28, 1986, the trial court conducted a suppression hearing on this motion pursuant to *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965), *cert. denied,* 384 U.S. 1017 (1966). At the *Goodchild* hearing, Schultz testified on direct examination that, because he was suffering from the lingering effects of the carbon monoxide poisoning on November 20, 1985 when Investigator Roderick interviewed him, he could neither remember being read his *Miranda* rights nor remember, at the time of the interviews, the events of the previous day. On cross-examination, Schultz began by again declaring that at the time of the November 20, 1985 interviews with Roderick he had no recollection of the previous day. Then, the following exchange, which has become central to this appeal, took place:

> Q. When you state you can't remember anything about anything, are you referring to the events of November 19?
>
> A. Yes.

At the conclusion of the testimony, the trial court ruled that the statements Schultz made to Investigator Roderick on November 20, 1985 were voluntary and that a valid waiver of Schultz's *Miranda* rights had been obtained.

At his jury trial, Schultz took the stand and testified as to what he remembered about the events of the night

---

[3]*Miranda v. Arizona,* 384 U.S. 436 (1966).

of his wife's death, November 19, 1985. This version of the events differed in several respects from the versions he related to Investigator Roderick during the November 20, 1985 interviews. On cross-examination, the following exchange took place as the prosecutor attempted to impeach Schultz's trial testimony with the testimony he gave at the *Goodchild* hearing:

Q. Do you remember me [(the prosecutor)] asking you the following question . . . [at the March 28, 1986 *Goodchild* hearing]:

"Q. When you state you can't remember anything about anything, are you referring to the events of November 19?"

Your answer:

"A. Yes."

A. Yes.

Q. So your testimony today and yesterday is that now on April 17, you do remember the events of November 19, 1985?

A. Yes, I do.

The prosecutor was apparently attempting to impeach Schultz's ability at trial to remember accurately the night of his wife's death by showing that he could not remember that night at the *Goodchild* hearing.

Schultz objected to the use of his *Goodchild* testimony to impeach his trial testimony, arguing that *Goodchild* testimony is entirely inadmissible at trial according to the fifth, sixth, and fourteenth amendments to the United States Constitution and article I, sections 7 and 8 of the Wisconsin Constitution.[4] The circuit court ruled

[4]Schultz argues on appeal that the prosecutor misquoted his *Goodchild* testimony to create the appearance that he could not

that the *Goodchild* testimony could be used at trial for impeachment purposes. The circuit court's basic reasoning was that, by taking the stand at trial, Schultz had waived his fifth amendment self-incrimination right and had placed his credibility in issue.

remember the night of his wife's death at the time of the *Goodchild* hearing. Schultz claims that he never testified at the *Goodchild* hearing that he could not remember, at the time of the *Goodchild* hearing, the night of his wife's death; rather, his testimony at the *Goodchild* hearing only referred to his ability to recall the night of his wife's death the next day as he was being interviewed by Investigator Roderick while still under the effects of carbon monoxide poisoning. Schultz insists that, since he never stated that he could not remember the night of his wife's death at the time of the *Goodchild* hearing, his *Goodchild* testimony was not inconsistent with his trial testimony where he could remember those events. Attempted impeachment with his *Goodchild* testimony was thus improper, according to Schultz.

However, Schultz objected to the use of his *Goodchild* testimony for impeachment purposes on the ground that such use violated his constitutional rights, not on the ground that the statements were not inconsistent. Schultz's argument on appeal that there was no inconsistency is deemed by this court to have been waived because, "[i]n order to preserve an issue for appeal as a matter of right, a party must object to the error at trial, stating the proper ground for the objection." *State v. Romero,* 147 Wis. 2d 264, 274, 432 N.W.2d 899 (1988).

The rule stated in *Romero* is subject to two exceptions that allow this court to address unpreserved claims: first, this court can address an erroneous introduction of evidence based on the plain error rule set forth in sec. 901.03(4), Stats.; second, this court can reverse a judgment in the interests of justice under sec. 751.06, Stats. *Romero,* 147 Wis. 2d at 274-75 & n. 3. Schultz does not rely on either exception, and the record in this case does not support *sua sponte* review by this court under either exception.

414

In his closing argument, the prosecutor noted Schultz's inconsistent memory:

> [Schultz] goes from having a great deal of information on November 20 . . . to knowing nothing in March [at the time of the *Goodchild* hearing], back to knowing a great deal here in court.

The jury found Schultz guilty of first-degree intentional homicide. The circuit court then sentenced Schultz to life imprisonment.

Schultz filed a post-conviction motion for mistrial and request for a new trial. In support of this motion, one of Schultz's arguments was that the prosecutor's use of his *Goodchild* testimony at trial violated the federal and state constitutional privilege against compelled self-incrimination.[5] In its order denying this motion, the circuit court ruled that, by deciding to testify in his own behalf at trial, Schultz opened himself to impeachment with any *Goodchild* testimony that was inconsistent with his trial testimony.

Schultz appealed both the judgment of conviction and the order denying his post-conviction motion. The court of appeals affirmed with one judge dissenting. The court of appeals addressed the issue of whether Schultz's privilege against compelled self-incrimination was violated when the prosecution used his *Goodchild* testimony in an effort to impeach him at trial. The court of appeals relied primarily on this court's decision in *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973), and held that Schultz's *Goodchild* testimony was available to impeach Schultz after he waived his privilege against self-incrimination by testifying at trial. *Schultz,* 148 Wis. 2d at 377.

---

[5] Apparently, Schultz's claims under the sixth amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution were no longer at issue.

415

In this court, Schultz argues, as he did in the lower courts, that the use of his *Goodchild* testimony in an effort to impeach him at trial violated his privilege against compelled self-incrimination under both the fifth amendment to the United States Constitution and article I, section 8(1) of the Wisconsin Constitution. Schultz insists that his *Goodchild* hearing testimony is compelled testimony. Because his *Goodchild* testimony is compelled, Schultz contends that it was inadmissible at trial for any purpose, including impeachment. [6]

Schultz correctly asserts that, according to both federal and state law, compelled or involuntary testimony is inadmissible at trial for any purpose. In *New Jersey v. Portash,* 440 U.S. 450 (1979), the United States Supreme Court decided whether the federal constitutional privilege against compelled self-incrimination prevented a prosecutor from using a criminal defendant's grand jury testimony, immunized by a New Jersey statute, to impeach that defendant's trial testimony. The Court determined that testimony elicited by a grant of legislative immunity is compelled testimony. The Court held that, according to the fifth and fourteenth amendments to the United States Constitution, such compelled testimony is inadmissible for impeaching the defendant's trial testimony or for any other use at trial:

> [A] defendant's compelled statements . . . may not be put to any testimonial use whatever against him in a criminal trial.

[6]Although much of the analysis in this opinion is derived from United States Supreme Court decisions construing the fifth amendment privilege, the same analysis applies in determining the protection afforded by Schultz's Wisconsin constitutional privilege. *State v. Sorenson,* 143 Wis. 2d 226, 259-60, 421 N.W.2d 77 (1988).

*Portash,* 440 U.S. at 459 (citing *Mincey v. Arizona,* 437 U.S. 385 (1978)).

Similarly, this court has held that an involuntary statement is inadmissible against the defendant for any purpose at trial. *Gaertner v. State,* 35 Wis. 2d 159, 173, 150 N.W.2d 370 (1967).

In contrast, the United States Supreme Court has drawn a distinction between trial use of a defendant's truly compelled statements and those that are properly viewed as less than compelled. For example, statements obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), can be used for impeachment purposes as long as such statements are not truly compelled or involuntary. In *Harris v. New York,* 401 U.S. 222 (1971), the prosecution conceded that the defendant's statements were obtained in violation of *Miranda* and did not attempt to use them in its case-in-chief. However, after the defendant testified in his own defense at trial, the prosecutor sought to impeach the defendant's testimony with the illegally obtained statements. Because the defendant made no claim that these statements were coerced or involuntary, the Court held that they could be used to impeach the defendant at trial:

> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

*Harris,* 401 U.S. at 226. *See also Oregon v. Hass,* 420 U.S. 714 (1975). Significantly, in reaching this result, the Court balanced the various interests that were implicated by allowing impeachment of this sort. The Court determined that improper police conduct was adequately

deterred by barring the use of such statements in the prosecution's case-in-chief, while impeachment in this manner greatly assisted credibility evaluations. *Harris,* 401 U.S. at 225.

Likewise, this court has held that a statement obtained in violation of *Miranda* is available to impeach the defendant's credibility at trial even though the statement is inadmissible in the prosecution's case-in-chief. *See, e.g., State v. Mendoza,* 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980).

Thus, this court must determine whether Schultz's *Goodchild* testimony is compelled. If it is found to be compelled, then it was inadmissible at trial for any purpose, including impeachment, according to *Portash* and *Gaertner.*

Schultz relies primarily upon *Simmons v. United States,* 390 U.S. 377 (1968), to support his contention that *Goodchild* testimony is compelled testimony. In *Simmons,* one of the petitioners, Garrett, moved to suppress incriminating evidence, contending it was obtained by F.B.I. agents in violation of the fourth amendment to the United States Constitution. In order to have standing to make this motion, Garrett was required, at the suppression hearing, to give incriminating testimony. Garrett's motion to suppress failed, and the incriminating testimony given at the suppression hearing was admitted against him at trial on the issue of guilt. *Id.* at 390–91. Garrett argued that admitting his suppression hearing testimony against him at trial was impermissible. The United States Supreme Court agreed, holding as follows:

> [W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against

him at trial on the issue of guilt unless he makes no objection.

*Id.* at 394.

In reaching this conclusion, the Court emphasized the tension that was created between constitutional rights when a defendant is forced to forego one constitutional right in order to assert another. In Garrett's case, the tension existed between his fourth amendment right to suppress unlawfully obtained evidence and his fifth amendment privilege against self-incrimination. The Court noted that admitting suppression hearing testimony to prove guilt at trial forced Garrett to choose either to give up his fourth amendment claim by not testifying at the suppression hearing (thereby protecting his fifth amendment right) or to waive his fifth amendment right by testifying at the suppression hearing (thereby protecting his fourth amendment right). The Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.*[7]

Arguing that *Simmons* held that suppression hearing testimony is in essence compelled testimony, Schultz asks this court to find that his *Goodchild* testimony is compelled testimony. He notes that his *Goodchild* testimony was necessary in his effort to suppress statements he claimed were illegally obtained. Thus, according to Schultz, a tension between constitutional rights, similar to the tension found in *Simmons,* exists here: in order to

[7]However, in *Simmons,* the Court only dealt with the issue of the introduction of the suppression hearing testimony in the prosecution's case-in-chief. *Brown v. United States,* 411 U.S. 223, 228 (1973). *Simmons* did not address the impeachment issue; therefore, it is not dispositive of the issue in this case. *Simmons* only decided that *Goodchild* testimony could not be used in the prosecution's case-in-chief.

suppress the statements he claimed were obtained in violation of his privilege against compelled self-incrimination, he was forced to testify at the suppression hearing, thereby relinquishing that same privilege. Under Schultz's interpretation of *Simmons, Goodchild* or suppression hearing testimony is compelled, thus inadmissible for any purpose at trial, because it is impermissible to require defendants to choose between suppressing their illegally-obtained statements and asserting their right to be silent.[8]

The problem with Schultz's argument is that post-*Simmons* decisions indicate that the United States Supreme Court has never believed that compelled testimony, within the meaning of the fifth amendment to the United States Constitution, is elicited merely because a defendant was required to make the difficult choice to testify at the suppression hearing. In *United States v. Salvucci,* 448 U.S. 83 (1980), the Court noted that it has not yet decided whether *Simmons* prevents the prosecution from impeaching a defendant's trial testimony with that defendant's suppression hearing testimony. *Id.* at 93–94. *See also Brown v. United States,* 411 U.S. 223, 228 (1973) (Under the holding of *Simmons,* a defendant's suppression hearing testimony "is not directly admissible against him in the trial."). In fact, the majority in *Salvucci* suggested that use of suppression hearing

---

[8]Both rights involved in this case stem from the privilege against compelled self-incrimination. For clarity, the rights are hereinafter referred to as the right to suppress the illegally obtained statements and the right to be silent. Schultz refers to the latter right as the "right to be free from use, at trial, of statements which are compelled from previous court proceedings." There is no practical difference between this court's and Schultz's enunciation of this right.

testimony to impeach trial testimony would be permissible:

> This Court has held that "the protective shield of *Simmons* is not to be converted into a license for false representations . . .."

*Salvucci,* 448 U.S. at 94 n. 9 (quoting *United States v. Kahan,* 415 U.S. 239, 243 (1974)). The dissent in *Salvucci* understood the majority as indicating that suppression hearing testimony would be available for impeachment purposes at trial. *Id.* at 96 (Marshall, J., dissenting).

Moreover, in *McGautha v. California,* 402 U.S. 183 (1971), *vacated on other grounds,* 408 U.S. 941 (1972), decided three years after *Simmons,* the Court again indicated that the question of whether suppression hearing testimony could be used to impeach trial testimony was still open. In *McGautha,* one of the petitioners, Crampton, challenged Ohio's practice of determining guilt and punishment in a single trial, arguing that the Constitution required guilt and punishment to be determined in separate stages. Crampton reasoned that the single trial procedure created an "intolerable tension" between constitutional rights and was therefore invalid under *Simmons* : the single trial procedure forced him to give up his fifth amendment right to remain silent on the issue of guilt in order to assert his fourteenth amendment right to be heard on the issue of punishment. *McGautha,* 402 U.S. at 210–11. After characterizing the fifth amendment interests involved in *Simmons* as insubstantial, the Court questioned the rationale of *Simmons* to the extent that it was based upon the tension created when a defendant is forced to forego one constitutional right in order to assert another:

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

*Id.* at 213 (citations omitted).

It is thus apparent that *Simmons* did not hold that suppression hearing testimony is compelled testimony within the meaning of the fifth amendment to the United States Constitution. The Court's decision in *Portash* makes it clear that compelled or involuntary testimony cannot be used for any purpose at trial, including impeachment. Yet, in *Salvucci,* the Court stated that the impeachment issue was still undecided and that *Simmons* cannot be turned into a license to commit perjury. Had *Simmons* viewed suppression hearing testimony as compelled there would be no doubt that such testimony would be inadmissible for impeachment purposes under *Portash.* Moreover, in *McGautha,* the fifth amendment interests implicated by the voluntary choice to testify at a suppression hearing were deemed insubstantial, and the Court indicated that use of suppression hearing testimony at trial is permissible as long as the policies behind the rights involved are not impaired to a significant degree. Again, had *Simmons* viewed suppression hearing testimony as compelled, the fifth amendment interests would be termed substantial, and suppression hearing testimony would be inadmissible for impeachment regardless of whether such

impeachment use impaired constitutional policies. *See Portash,* 440 U.S. at 459.

Although Schultz's *Goodchild* testimony is not compelled merely because Schultz was required to choose between asserting his right to suppress the statements and his right to be silent, *McGautha* requires this court to determine "whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." *McGautha,* 402 U.S. at 213. That is, this court must determine whether the policies behind either the right to suppress the statements or the right to be silent were impaired by allowing the prosecution to attempt to impeach Schultz's trial testimony with his *Goodchild* testimony.[9]

■

In determining whether requiring Schultz to choose between asserting his right to suppress his statements and his right to be silent impairs the policies of either right, "it is also appropriate to consider the legitimacy of the challenged governmental practice." *Jenkins v. Anderson,* 447 U.S. 231, 238 (1980). *See also Chaffin v. Stynchcombe,* 412 U.S. 17, 32 (1973). In our case, the use of *Goodchild* testimony to impeach trial testimony is, of course, the challenged governmental practice. In *Jenkins,* the United States Supreme Court confronted the question of whether the defendant's prearrest silence could be used to impeach his credibility at trial. The defendant argued that impeachment with prearrest silence impermissibly burdened his fifth amendment right to remain silent. Because of the possibility of impeachment with prearrest silence, the defendant was required to make the difficult choice of whether or not to

[9]For a formulation of the basic policies of the self-incrimination clause of the fifth amendment, see *Murphy v. Waterfront Commission,* 378 U.S. 52, 55 (1964).

remain silent prior to arrest. *Jenkins,* 447 U.S. at 236–37. In holding that such impeachment was proper, the Court noted that impeachment is a legitimate governmental practice because it assists in the discovery of the truth in the criminal process. *Id.* at 238. Facilitating the discovery of the truth is indeed a legitimate goal:

> There is no gainsaying that arriving at the truth is a fundamental goal of our legal system. We have repeatedly insisted that when defendants testify they must testify truthfully or suffer the consequences.

*United States v. Havens,* 446 U.S. 620, 626 (1980) (citations omitted).

Once the governmental practice is deemed legitimate, the United States Supreme Court seems to balance the virtues of that practice against the impairment caused by requiring the defendant to choose. In *Chaffin v. Stynchcombe,* the Court considered a challenge to the governmental practice of jury sentencing, where it was argued among other things that the possibility of a higher sentence on retrial impaired a defendant's right to challenge a first conviction on appeal. The Court rejected this argument. The Court first found that jury sentencing is a legitimate practice. It then determined that it is constitutionally permissible to "require the accused to choose whether to accept the risk of a higher sentence or to waive his rights [to challenge his conviction]" as an "incidental consequence" of that legitimate practice. *Chaffin,* 412 U.S. at 32–33. Moreover, in *Jenkins,* where impeachment required the defendant to choose whether or not to exercise his right to remain silent, the Court found the governmental interest in promoting the discovery of the truth to be predominant:

> Once a defendant decides to testify, "[t]he interests of the other party and regard for the function of

courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege of self-incrimination."

*Jenkins,* 447 U.S. at 238 (quoting *Brown v. United States,* 356 U.S. 148, 156 (1958)).

In this case, assuming that Schultz was required to choose between asserting his right to suppress the statements and his right to be silent, it was not per se impermissible to require Schultz to make this choice. *McGautha,* 402 U.S. at 213. Rather, requiring Schultz to make this choice was proper as long as the policies behind the rights involved were not impaired. In determining whether the policies behind the rights involved have been impaired, *Jenkins* and *Chaffin* allow courts to consider the legitimacy of the governmental practice that required Schultz to make the choice. It is apparent that, once Schultz offered trial testimony that the prosecution believed to be inconsistent with his *Goodchild* testimony, the state's interest in promoting the discovery of the truth through impeachment became predominant. *See Jenkins,* 447 U.S. at 238. Assuming the policies behind Schultz's constitutional rights were impaired by such impeachment at trial, any impairment was merely an "incidental consequence" to a legitimate and important governmental practice. *Cf. Chaffin,* 412 U.S. at 32-33; *Harris v. New York,* 401 U.S. at 225 (Statements taken in violation of *Miranda* can be used to impeach the defendant at trial because, on balance, the governmental interests in preventing perjury prevail over the possibility that allowing impeachment with such statements will encourage police misconduct.).

In fact, it is within the defendant's control to prevent the availability of *Goodchild* testimony for

impeachment from having any impact on either the right to suppress the statements or the right to be silent. The defendant has an obligation to tell the truth on the stand. *Harris,* 401 U.S. at 225; *State ex rel. Simos v. Burke,* 41 Wis. 2d 129, 137, 163 N.W.2d 177 (1968). If the defendant fulfills that obligation at both the *Goodchild* hearing and at trial, the defendant is not required to choose which right to assert because the possibility of impeachment with the *Goodchild* testimony disappears. Truthful defendants can thus seek to suppress what they claim to be illegally obtained statements without fear that the testimony they give at the *Goodchild* hearing will be used against them at trial.

We therefore hold that Schultz's rights under the fifth amendment to the United States Constitution and article I, section 8(1) of the Wisconsin Constitution were not violated when his *Goodchild* hearing testimony was used in an effort to impeach his trial testimony.[10] A

---

[10]In reaching this conclusion, we emphasize that the defendant appears at the *Goodchild* hearing to testify only about issues relevant to the motion to suppress:

> At this hearing, the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained.

*Goodchild,* 27 Wis. 2d at 265.

Other state courts have concluded that a defendant's suppression hearing testimony can be used to impeach that defendant at trial. *See, e.g., People v. Sturgis,* 58 Ill. 2d 211, 317 N.E.2d 545 (1974), *cert. denied,* 420 U.S. 936 (1975); *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972); *State v. Foraker,* 446 A.2d 1105 (Del. Super. Ct. 1982); *People v. Douglas,* 66 Cal. App. 3d 998, 136 Cal. Rptr. 358 (Cal. Ct. App. 1977); *Gray v. State,* 43 Md. App. 238, 403 A.2d 853 (1979); *Nelson v. State,* 607 S.W.2d 554 (Tex. Crim. App. 1980).

contrary result would condone perjury at the *Goodchild* hearing or at trial.

*By the Court.*—The decision of the court of appeals is affirmed.

CHIEF JUSTICE HEFFERNAN (concurring). I concur in the mandate of the majority affirming the decision of the court of appeals upholding the conviction. However, I would affirm the decision and the conviction on other grounds.

On appeal, defendant argues that his testimony at trial was not inconsistent with his testimony at the *Goodchild*[1] hearing and, therefore, it was erroneous for the trial judge to allow admission of his *Goodchild* testimony for the purpose of impeaching his trial testimony. Defense counsel, however, did not object to admission of the *Goodchild* testimony on that ground. Defense counsel objected to admission of defendant's Goodchild testimony only on constitutional grounds. Therefore, in this case, the trial judge did not have an opportunity to consider whether or not the defendant's testimony at trial was in fact inconsistent with his testimony at the *Goodchild* hearing. When no objection is made to the admission of evidence, a defendant is not entitled to a review as a matter of right. This court may properly exercise its discretion and review rulings on the admission of evidence, irrespective of a proper objection.[2] I elect to review the erroneous admission of this evidence because this court should avoid considering a constitutional issue

---

[1]*State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 265, 133 N.W.2d 753 (1965).

[2]*State v. Cleveland*, 118 Wis. 2d 615, 632, 348 N.W.2d 512 (1984); *Ollinger v. Grall*, 80 Wis. 2d 213, 223, 258 N.W.2d 693 (1977); and *State v. Sonnenberg*, 117 Wis. 2d 159, 176, 344 N.W.2d 95 (1984).

if the case can be resolved on other grounds.[3]

While prior inconsistent statements may be used to impeach a witness' credibility, a threshold inconsistency must be shown before the proposed inconsistent statement may be introduced.[4] In order to determine whether a prior statement is indeed inconsistent, a court must examine not just individual words or phrases alone, but instead must consider the whole impression or effect of the prior statement.[5] This court addressed the use of evidence, excluded at trial, for the purpose of impeachment in *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973):

> [E]vidence excluded on direct should not be used for impeachment unless the accused takes the stand and testifies to matters *directly contrary* to what is in the excluded statement. The foundation for the use of the impeaching statements must be found in prior testimony. [Emphasis added.]

57 Wis. 2d at 356.

Therefore, this court must examine the precise language of defendant's testimony within the context of the *Goodchild* hearing in order to determine whether his *Goodchild* testimony was directly contrary to his trial testimony.

The purpose of a *Goodchild* hearing is to determine whether a defendant's statements were obtained in violation of constitutional requirements, and therefore would

---

[3]*Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 344 N.W.2d 177 (1984); *Kollasch v. Adamany,* 104 Wis. 2d 552, 313 N.W.2d 47 (1981).

[4]See 3A Wigmore, *Evidence,* sec. 1040; sec. 908.01(4)(a), Stats.; and *United States v. Hale,* 422 U.S. 171 (1975).

[5]Wigmore, *supra.*

be inadmissible at trial.[6] The *Goodchild* hearing serves the sole purpose of providing a defendant with the opportunity of making a record of the facts and circumstances under which the confession was obtained.[7] Defendant testified in March of 1986 at the *Goodchild* hearing that, when Investigator Roderick questioned him on November 20, 1985, he was suffering from the effects of carbon monoxide poisoning and therefore was unable to knowingly and intelligently waive his right to counsel. It is uncontrovertible that all of the defendant's testimony at the *Goodchild* hearing related to his state of mind on November 20, 1985, as he was lying in a hospital bed recovering from carbon monoxide poisoning and being interrogated by Investigator Roderick. At no time did the defendant testify at the *Goodchild* hearing about his ability in March of 1986 to recall what happened on November 19, 1985, nor would such testimony have been relevant. The following exchange took place between the defendant and his attorney at the *Goodchild* hearing in March, 1986.

Q. [Defense Counsel] Do you recall how you felt physically on November 20, 1985?

A. [Defendant] Like I couldn't move. When I was—or would come to consciousness, I was just like in a daze.

Q. [Defense Counsel] Do you recall mentally how you felt on November 20, 1985?

A. [Defendant] I couldn't remember anything about anything.

On cross-examination, the assistant district attorney inquired further about the defendant's state of mind

---

[6]*Goodchild,* 27 Wis. 2d at 265.
[7]*Id.*

429

on November 20, 1985, when Investigator Roderick was interrogating him at the hospital:

> Q.  [Asst. District Attorney] I believe you testified that on November 20th, mentally, you *couldn't* remember anything about anything? [Emphasis added.]
>
> A.  [Defendant] Very much so, yes.
>
> Q.  [Asst. District Attorney] When you state you *can't* remember anything about anything, are you referring to the events of November 19? [Emphasis added.]
>
> A.  [Defendant] Yes.
>
> Q.  [Asst. District Attorney] So, it's your belief that *at the time you were being questioned* [on November 20, 1985] you had no recollection of the events of November 19th? [Emphasis added.]
>
> A.  [Defendant] Very little.

The state argues that the defendant testified at his *Goodchild* hearing that he was still, as of March 28, 1986, unable to recall what happened on November 19, 1985. Therefore, the state claims that admission of the defendant's *Goodchild* testimony at trial was proper, relying on the theory that the defendant testified at his *Goodchild* hearing that he could not remember what happened the night of November 19, 1985, but now, conveniently, at trial he could remember.

The state claims that, because the defendant used the present tense "can't," he was referring to his ability at the *Goodchild* hearing in March, 1986 to recall what happened on November 19, 1985. However, this interpretation is inaccurate. The assistant district attorney misquoted the defendant's testimony at the *Goodchild*

hearing. The defendant had just said he "couldn't" remember, not "can't" remember. Furthermore, the assistant district attorney eliminated any confusion by subsequently asking the defendant if he was referring to his ability to recollect the events of November 19, 1985, "at the time [he was] being questioned." Given the context and content of the defendant's *Goodchild* testimony, I conclude that its admission for the purpose of impeaching his trial testimony was erroneous because the defendant's *Goodchild* testimony was not inconsistent with his testimony at trial.

Although I conclude that the admission of the *Goodchild* testimony was erroneous, in deciding whether the conviction should stand, it is necessary to determine whether that evidentiary error was prejudicial. I conclude it was not. There is no reasonable possibility in this case that the inadmissible *Goodchild* testimony contributed to the verdict of guilty.[8] The error was harmless, and the decision affirming the conviction may properly be affirmed.

This case illustrates the importance of carefully scrutinizing the admission of *Goodchild* testimony before allowing its use for the purpose of impeaching a defendant's testimony at trial. The majority is correct in stating that the government has a strong interest in preventing perjury and that defendants have an obligation to tell the truth if they choose to take the stand. However, I disagree with the majority that this policy of truthfulness is being furthered in this case, for this is a case where the state has created the impression that an inconsistency existed where there was none. The majority's rationale should be limited to those situations where it is clear that the defendant is committing per-

[8]*State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985).

jury at trial. I concur in the mandate because there was overwhelming evidence of guilt produced at trial, but I find no foundation of inconsistency that would permit the use of the *Goodchild* testimony for impeaching the defendant's testimony at trial.

I am authorized to state that Justice Shirley S. Abrahamson joins in this concurrence.